HORACE BROWN *vs.* ALICE BALFOUR and Garnishee.

April 8, 1891.

Co-Operative Life-Insurance Company—Garnishment of Fund Pay-
    able to Family of Deceased Member.—No part of the fund set apart
    or appropriated in accordance with the rules, regulations, and by-laws of
    either of the societies or associations enumerated in Gen. St. 1878, *c.* 34,
    § 368, or by any society or association similar thereto,(section 369,) to be
    paid over to the family of a deceased member, (unless the amount exceeds
    the sum of $5,000,) can be seized or appropriated by legal process to satisfy
    a debt due from a member of the family, or from the society or organiza-
    tion itself.

Same—Bankers' Life Association.—The Bankers' Life Association, a cor-
    poration organized under the laws of this state for the purpose of life-in-
    surance upon the *co-operative or assessment* plan, is an association of the
    same character as those mentioned in said section 368, and its funds are
    exempt from execution to the same extent.

    Appeal by plaintiff from an order of the district court for Henne-
pin county, *Hooker, J.,* presiding, discharging a garnishee.
    *Frederick B. Lathrop,* for plaintiff.
    *John D. O'Brien,* for defendant.
    *Warner, Richardson & Lawrence,* for garnishee.
    COLLINS, J.[1]   The plaintiff, (appellant,) having previously obtained
a judgment against defendant, garnished the Bankers' Life Associa-

---

[1] Mitchell, J., being absent, took no part in this decision.

tion, a corporation organized in the year 1880 in the manner prescribed and under the provisions of Gen. St. 1878, *c*. 34, title 3, which title relates to corporations other than those for pecuniary profit. The general plan, as shown by the articles of incorporation, was to unite and associate in membership male persons possessing certain specified qualifications, for the purpose of obtaining employment while living, and at their decease for securing and rendering pecuniary assistance in a stated amount to their families, by means of assessments upon the survivors, the amount being paid over in each case, when collected, to the person designated to receive the same for the family by the deceased member when making application for membership or thereafter. The association had no capital stock, its entire assets being derived from its members. When joining, each paid into its treasury a sum equal in amount to his age, styled a "guaranty deposit," and another sum equal in amount to 2 per cent. of the guaranty deposit, in full for the first casual assessment against him, both of these sums being set apart as a beneficiary fund to be paid over to the families of deceased members. The applicant also paid a membership fee and his *pro rata* proportion of the annual expense assessment for the unexpired portion of the current fiscal year. Thereafter the member was assessed periodically for operating expenses, and casually for such sums as became necessary for the payment of death claims, the casual assessment being 2 per cent. of the guaranty deposit for each death claim. The garnishee was beyond doubt an insurance society or association doing business on the co-operative or assessment plan, incorporated for the sole purpose of mutual protection, and for the payment of stipulated sums of money to the families of deceased members. It was therefore expressly exempted, by section 368, *c*. 34, *supra*, from the provisions of the general life-insurance laws of the state; and by subsequent legislation it had been made subject to certain rules laid down for the regulation and government of all corporations, associations, and societies of its character. Laws 1885, *c*. 184, §§ 5, 6.

Mathew A. Balfour became a member of this association on March 7, 1887, and died January 7, 1890, leaving as members of his family a widow, the defendant, and four minor children. In the certificate

of membership—in the ordinary form—issued to him when joining, the association agreed and covenanted, subject to certain provisos of no consequence in these proceedings, to pay to his family, and on the receipt of the representative thereof named in his application, the sum of $2,000 within 60 days after due proof of his decease. Due proof of his death was made, but for reasons going to the merits, and not with respect to this defendant's right to act as plaintiff, and as the duly-designated representative of the deceased member's family, the association refused to pay. Legal proceedings were had for a recovery upon the certificate, the widow being plaintiff, which resulted in a verdict in her favor on June 20, 1890, for the sum of $2,035. The garnishee summons was served on the association the following day.

It would be a waste of time for us to discuss or determine in this proceeding just what right or interest this defendant has in the amount to be paid over when judgment is entered upon that verdict, whether she holds the whole in her own right or simply in trust, or whether she has an absolute title to one-fifth, as a member of a family consisting of five persons. She recovered upon the certificate solely, claiming no rights except such as were found therein; and in this proceeding, at least, the terms of the certificate must govern the plaintiff.

Whatever the widow's interest in the fund, whether great or small, the amount thereof is beyond the reach of her creditors, so long as it remains unpaid. Section 369 of said chapter 34 (the same being section 2 of chapter 128, Laws 1877) reads as follows: "When any benevolent association or society similar to those enumerated in section one of this act [section 368] set apart or appropriate a beneficiary fund to be paid over to the families of deceased, or to any member of said families, any such fund, not exceeding the sum of five thousand dollars, so provided and set apart according to the rules, regulations, or by-laws of said association or society to the family of any deceased member, or to any member of said family, shall be exempt from execution, and shall under no circumstances be liable to be seized, taken, or appropriated by any legal or equitable process to pay any debt of such deceased member." The rule of construction

laid down by this court, (*McNamara* v. *Minn. Cent. Ry. Co.*, 12 Minn. 269, (388;) *King* v. *Kelly*, 25 Minn. 522,) that a statute must be construed so that, if it can be prevented, no clause, section, or word shall be void, superfluous, or without significance, is quoted by appellant's counsel, and we readily agree with him that this rule must be regarded when construing section 369. Force and effect should be given to each part, and the legislative intent discovered, if possible. This particular portion of the section has not been made quite as plain, perhaps, as it has in later legislation, upon this class of associations, (Laws 1885, *c.* 184, § 17;) but the difference in the language, if there be any, is scarcely perceptible. If, as claimed by appellant, these clauses in reference to an exemption of the fund (one prohibiting its seizure upon execution, the other its appropriation in payment of the debts of the deceased) relate to the same subject-matter,—the indebtedness of the member, and to no other indebtedness,—the clause or provision in reference to an execution is surplusage, for the succeeding clause covers the whole ground; it absolutely and without the slightest opportunity for misapprehension forbids the application of any part of the fund in payment of the decedent's liabilities. From the language used in the statute under consideration it is not only evident that the law-makers took special care to protect the fund created and set apart in these associations and societies from demands which might be asserted by creditors of deceased members, but that they intended to and did go further in the matter of protection and exemption. Having in mind the worthy and benevolent design made so prominent in organizations of this character, realizing that the fund accumulated by assessment upon the living was for the relief and assistance of the families of deceased members, not for the benefit of creditors, and appreciating, undoubtedly, the unwisdom of prohibiting the use of the money in payment of debts contracted by members, and, at the same time, allowing it to be seized by the creditor of a beneficiary in payment of his debt, or otherwise allowing it to be diverted from coming into the hands of those for whom it was designed and created, the legislators expressly enacted that it should be exempt from execution, in addition to providing that no part should go to the creditors of the member. The

object which seems to have been kept in view and to have been accomplished by the use of words which prevent the interposition of legal process whereby the money may be turned aside from a benevolent channel and placed in the hands of a creditor of a member, or of one of his family,—a beneficiary,—or even of a creditor of the association, was the relief and assistance, when most needed, of those for whom the fund was designed and created, the complete immunity of the fund itself from the process of the courts. Obviously the amount due upon the decease of a member has been placed beyond seizure for the debt of a member, or a beneficiary, or of the association itself. Language found in an act creating a similar association in the state of Kentucky, almost precisely that of section 369, has recently been construed by the supreme court of that state. It was held that the fund was exempt, whether garnished for the debt of a member or for an indebtedness due from one of his family. *Schillinger* v. *Boes,* 85 Ky. 357, (3 S. W. Rep. 427.)

Unless the construction we have determined upon, or that, at least, adopted by the court just mentioned, can be given to the words under consideration, they are wholly superfluous and without meaning at all times. In fact, without so construing them, the entire section would be valueless as a rule, because inapplicable to nearly all co-operative or assessment life-insurance organizations. Almost without exception these associations provide in their articles of incorporation and in their membership certificates, as did this garnishee, that the fund shall be paid to his family upon the decease of a member. At no time has he an interest which may subject the money to the payment of his debts. On the other hand, construing the section as we have indicated gives it significance and effect as to each of these societies and associations; their plans are promoted, and objects encouraged; and they are the better enabled to accomplish their benevolent and charitable purposes. In addition to this, such construction is in harmony with all legislative action upon the subject of co-operative and assessment associations, as well as with the universal rule of construction that, when applied to such organizations, a liberal construction is required of their articles and of the statutes, in favor of the objects of their bounty, and to prevent the

application of their funds to the benefit of those who are strangers. The purposes and objects to be attained by such organizations should not be defeated by a strict construction of their articles of association or of the statutes. *Jewell* v. *Grand Lodge,* 41 Minn. 405, (43 N. W. Rep. 88;) *Am. Legion of Honor* v. *Perry,* 140 Mass. 580, (5 N. E. Rep. 634;) *Ballou* v. *Gile,* 50 Wis. 614, (7 N. W. Rep. 561.) Order affirmed.

