### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## EASTERN DIVISION.

## KNOXVILLE, SEPTEMBER TERM, 1915.

HAMILTON NAT. BANK *v.* SAM AMSTER *et al.*

(*Knoxville.* September Term, 1915.)

1. **STATUTES.** Subjects and titles of acts. Constitutional restrictions.

Pub. Acts 1905, ch. 480, entitled "An act to provide for the organization, admission and regulation of fraternal beneficiary associations, transacting the business of life insurance and to repeal all laws in conflict with the provisions of this act," does not violate Const. art. 2, sec. 17, which provides that, "No bill shall become a law which embraces more than one subject, that subject to be expressed in the title," since the subject of the act is single, providing for "fraternal beneficiary associations transacting the business of life insurance" and the words, "organization, admission or regulation" used in the title, do not express the object, but are provisions incidental to the single object and the means necessary to be incorporated into the body of the act in order to effectuate the single object expressed in the title. (*Post, pp.* 542, 543.)

Acts cited and construed: Acts 1905, ch. 480, sec. 12.

Constitution cited and construed: Sec. 17, art. 2.

2. **CONSTITUTIONAL LAW. Insurance. Discrimination. Discrimination against particular classes of corporations.**

Pub. Acts 1905, ch. 480, sec. 12, provides that benefits to be paid by any association organized under the act shall not be liable to attachment or other process, and shall not be applied by any legal or equitable process or operation of law, for any liability of a certificate holder or beneficiary, and that such associations are declared to be charitable institutions, and all lodge property and funds are exempt from taxation. Const. art. 1, sec. 8, provides that no man shall be deprived of life, liberty, or property but by the judgment of his peers or the law of the land. Const. art. 11, sec. 8, provides that the legislature shall have no power to suspend general laws or by any law grant exemptions or privileges to any individual which are not extended to any person able to bring himself within its provisions, and that corporations shall be created only by general laws. *Held*, that this section is not unconstitutional as arbitrary, unreasonable, or capricious in discriminating in favor of certificate holders under this act by conferring privileges not accorded to certificate holders of other beneficiary associations and ordinary life companies, since the associations provided for under the act are declared to be charitable institutions, as the law applies to all associations of this kind, and since contracts of insurance are sufficiently distinctive in character to bear a classification separating them from other contracts and as between themselves, it not being necessary for the reason for classification to be disclosed on the face of the act. (*Post*, *pp.* 543-551.)

Cases cited and approved: Farmers' & Merchants' Ins. Co. v. Dobney, 189 U. S., 301; State v. Webber, 214 Mo. 272; Lodge v. Johnson, 98 Tex., 1; Fidelity Mutual Life Association v. Mettler, 185 U. S., 308.

Cases cited and distinguished: Insurance Co. v. Whitaker, 112 Tenn., 155; Brown v. Balfour, 46 Minn., 68; Fisher v. Donovan, 57 Neb. 361; Condon v. Maloney, 108 Tenn., 82-96.

3. CONSTITUTIONAL LAW. Class legislation. Discrimination against particular classes of corporations.

Such provision is not unconstitutional as class legislation in discriminating in favor of associations falling under provisions of the act by permitting them to offer advantages to members which are denied to ordinary life companies, as it is a general act, and all of the rights, privileges, immunities, or exemptions allowed by it may be enjoyed by any ordinary life company which shall organize under the act and comply with its terms. (*Post, p.* 551.)

Constitution cited and construed: Sec. 8, art. 11; Sec. 8, art. 1.

4. EXEMPTIONS. Public policy. Fraternal benefit associations. Creditors.

It is within the power of the legislature to exempt the property of a fraternal beneficiary association from the claims of creditors of its policy holders or beneficiaries on the ground of public policy. (*Post, p.* —.)

Code cited and construed: Secs. 4030, 4231 (S.).

5. CONSTITUTIONAL LAW. Special privileges. Discrimination against particular classes of corporations.

Such provision is not unconstitutional as discriminating against other associations of the same class; as it grants the same privileges to all associations falling within the terms of the act. (*Post, pp.* 551, 552.)

6. CONSTITUTIONAL LAW. Insurance. Class legislation. Discrimination against particular classes of corporations.

Pub. Acts 1905, ch. 480, sec. 32, provides in part that nothing contained therein shall be construed to affect local lodges of an association then doing business in the State, with death benefit not exceeding $300 or disability benefit not exceeding $300 in any one year or both. Const. art. 1, sec. 8, provides that no man shall be deprived of life, liberty, or property by the judgment of his peers or the law of the land. Const. art. 11, sec. 8, provides that the legislature shall have no power to suspend general laws or by any law grant exemption of privileges to any individual which are not extended

to any person able to bring himself within its provisions, and that corporations shall be created only by general laws. *Held*, that this section is not unconstitutional as arbitrary, unreasonable, or capricious, since, in view of the limited amount of business done by such associations, it was a proper exercise of the legislative power to classify so as to free them from the obligations of the act. (*Post, pp.* 552-555.)

---

FROM HAMILTON.

---

Appeal from the Chancery Court of Hamilton County.—W. L. FRIERSON, Special Chancellor.

MEACHAM & McGAUGHY, for appellant.

SIZER, CHAMBLISS & CHAMBLISS and J. L. LEVINE, for appellees.

MR. JUSTICE BUCHANAN delivered the opinion of the Court.

On December 17, 1914, the bank filed its original bill against Sam Amster and the Supreme Council of the Royal Arcanum. The bill averred that the last-named defendant was ''a fraternal insurance corporation organized under the laws of the State of Massachusetts,'' and that it had ''complied with the laws of Tennessee, and had been admitted to do the business of fraternal insurance in this State,'' etc.

The purpose of the bill was to subject a fund amounting to $2,300.50 averred to be in the hands of Amster's codefendant to the payment of a money decree in favor of the bank against Amster, rendered by the chancery

court of Hamilton county in July, 1914, and affirmed on appeal to this court at its Knoxville term, 1914.

The predicate for the relief sought is that Amster is insolvent, and determined to collect the fund from his codefendant, and thereafter to appropriate the same to his own use, leaving the bank without remedy under its decree; that Amster's codefendant will cooperate with him to such end; that defendants rely on section 12 of chapter 480 of the Public Acts of 1905. This act the bill assails as unconstitutional and void, on grounds to be considered later.

Each of defendants demurred separately, but on identical grounds, and the learned chancellor sustained the demurrer and dismissed the bill at complainant's cost, and the latter has appealed to this court and assigned errors.

The controlling question is the validity of the act of 1905. Subsequent to the appeal the bank caused an execution to issue from this court, based on the decree in its favor against Sam Amster. This execution was directed to the sheriff of Hamilton county, where Amster resided. After a *nulla bona* return on this execution another was issued directed to the sheriff of Davidson county, which was served by garnishment of Amster's codefendant. This service was made upon the insurance commissioner. The garnishee filed its answer in this court on August 4, 1915. Upon motion of the bank its appeal and the garnishment proceeding have been consolidated for hearing, and will be dis-

posed of as one cause, the two matters depending, at least in part, on a common question.

The first assault on the act is that it violates that part of section 17, art. 2, of the Constitution, which provides:

"No bill shall become a law which embraces more than one subject, that subject to be expressed in the title."

The title of the act is:

"An act to provide for the organization, admission, and regulation of fraternal beneficiary associations transacting the business of life insurance; and to repeal all laws in conflict with the provisions of this act."

The subject of this act is single. It is expressed in the title, and it is expressed in the body of the act. It is the single subject of the body of the act, and it is "to provide for fraternal beneficiary associations, transacting the business of life insurance." The words "organization, admission, and regulation," as used in the title of the act, do not express the single dominant object of the act, and provisions in the body of the act for "organization," for "admission," and for "regulation" are not provisions for separate purposes, but they are on the contrary provisions incidental to the single object of the act. They are agencies, means and instrumentalities necessary to be incorporated into the body of the act in order to effectuate the single object expressed in the title, and expressed in the body of the act when both the title and the body are correctly read and understood.

As the title to the act indicates, there are to be found in the body of the act provisions for the organization of such associations as are to fall under the operation of the act; also there are found in the body of the act provisions for admission to the operation of the act of such associations as fall under its operation, and these include both domestic and foreign associations. See closing sentence of section 37 of the act. As indicated by the caption, there are also provisions in the body of the act for the regulation of such associations as fall under its operation; but, as already pointed out, all these provisions are merely incidental to the general object of the act. They are each and all clearly germane to the general object, and therefore, in so far as they relate either to section 12 of the act or to section 32 of the act, the insistence that they are not germane to the general object of the act is unsound, and must be rejected.

We now pass to the question of classification. Section 12 of the act is as follows:

"Be it further enacted, that the money or other benefits, charity, relief, or aid to be paid, provided, or rendered by any association authorized to do business under this act, shall neither before nor after being paid, be. liable to attachment, garnishment, or other process, and shall not be seized, taken, appropriated, or applied by any legal or equitable process or operation of law to pay any debt or liability of a certificate holder, or of any beneficiary named in a certificate, or of any person who may have any right thereunder;

such associations are hereby declared to be charitable institutions, and the property held and used for lodge purposes and the funds of such associations shall be exempt from taxation under the general tax or revenue laws of the State.''

One insistence made is that section 12 violates section 8 of article 1 and section 8 of article 11 of our State Constitution, in that the classification made by section 12 is arbitrary, unreasonable, and capricious. For specification it is said that this section discriminates in favor of the certificate holders and beneficiaries falling under the operation of the act by conferring on them privileges which are not accorded the holders of certificates or policies of other associations of a similar character, viz., ordinary life companies and other beneficial associations.  Replying to this assault in detail, we will discuss section 12 in respect of its relation to ordinary life companies.

We find in the latter part of section 12 the legislative declaration that such associations as fall under the operation of the act are charitable institutions, and their lodge property and funds are by express words made exempt from taxation under the general revenue law of the State.  This provision demonstrates the width of the gulf in the legislative mind. between such associations as the legislature intended to fall under the operation of this act and ordinary life insurance companies.  And here is the explanation of the exemption from liability under ''attachment, garnishment, or other process,'' legal or equitable, to pay

any debt or liability of a certificate holder, or of a beneficiary named in a certificate, or of any person who may have any right thereunder, which provisions are to be found in the first part of section 12. The General Assembly, in enacting the provisions of section 12, understood that it was dealing with charitable associations, and, as already noted, expressly so declares in that section, and indeed this fact stands out on the face of the entire act. One illustration of it may be found in the definition of a fraternal beneficiary association in section 1 of the act, supplemented by sections 2 and 3. Another illustration is in section 4, which cleaves a clear line between associations falling under the operation of the act and "all provisions of the insurance laws of this State, not only in governmental relations with the State but for every other purpose," and this section closes with the emphatic declaration, "and no law hereafter passed shall apply to them (meaning fraternal benefit associations), unless they be expressly designated therein." Another illustration of the clear distinction drawn in the legislative mind between associations falling under the operation of this act and ordinary life companies may be found in section 6 of the act, which shows the narrow limits to which death benefits are confined, and in section 7, which discloses the limitations on beneficial membership imposed by that section on associations falling within the operation of the act. The legislative department of the State in the passage of this act was dealing with any corporation, society, or order,

or voluntary association without capital stock, organized and and carried on solely for the mutual benefit of its members and their beneficiaries, and not for profit, and having a lodge system with ritualistic form of work and representative form of government, and which shall make provisions for the payment of death benefits, and which may make provisions for the payment of disability benefits, or both (see section 1 of the act), and such associations as it was dealing with in the passage of this act were confined in their activities by sections 6 and 7 of the act. Death benefits under section 6 are confined to the wife, husband, family relatives by blood, marriage, or legal adoption, affianced husband, or affianced wife, or to any person or persons dependent on the member, subject to the limitation and control of the association as to the designation of beneficiaries within said classes. Under section 7 the activities of such associations were confined to the admission to beneficial membership of persons more than sixteen and under sixty years of age, etc.

What has been said suffices to show the class of fraternal beneficiary associations which the lawmakers intended to fall within the operation of this act. Now, it is mainfest that many points of difference exist between the business of life insurance transacted by such associations and the business of life insurance conducted by ordinary life insurance companies. It is unnecessary to undertake to enumerate these points of difference. Perhaps the fundamental one is the motive which underlies each business. Charity is the

underlying motive of the association covered by the provisions of this act. Such an association enters into the business of life insurance to the end that it may dispense a charity. It has no capital stock, and does no business for profit. Its form of government and system of conducting its business are as stated supra. On the other hand, the underlying motive in the business of ordinary life insurance is not charity at all, but profit. It is moved to enter into the business of life insurance by a wholly different consideration. Our legislation prior to the act in question has recognized the difference. This court, and other courts of last resort, have long been in agreement upon the point that contracts of insurance are proper subjects of classification in matters of legislation. Such contracts are sufficiently distinctive in character to bear a classification separating them from other contracts; and, more than this, they are sufficiently distinctive in character to bear a classification as between themselves. *Insurance Co.* v. *Whitaker,* 112 Tenn. (4 Cates), 155, and cases cited at page 173, 79 S. W., 119, 64 L. R. A., 451, 105 Am. St. Rep., 916; *Farmers' & Merchants' Insurance Co.* v. *Dobney,* 189 U. S., 301, 23 Sup. Ct., 565, 47 L. Ed., 821; *State* v. *Webber,* 214 Mo., 272, 113 S. W., 1054, 15 Ann. Cas., 983; *Brown* v. *Balfour,* 46 Minn., 68, 48 N. W., 604, 12 L. R. A., 373; *Lodge* v. *Johnson,* 98 Tex., 1, 81 S. W., 18; *Fidelity Mutual Life Association* v. *Mettler,* 185 U. S., 308, 22 Sup. Ct., 662, 46 L. Ed., 922; *Fisher* v. *Donovan,* 57 Neb., 361, 77 N. W., 778, 44 L. R. A., 383. In our own

case of *Insurance Co.* v. *Whitaker*, supra, it was said
that:

"The rule settled by the previous cases is that con-
tracts of insurance from their very nature are sus-
ceptible of classification, not only apart from other
contracts, but from each other."

In *Brown* v. *Balfour*, supra, the supreme court of
Minnesota construed a statute which provided that
a benefit by a fraternal beneficiary association should
be exempt from execution, and under no circumstances
seized, taken, or appropriated by any legal process to
pay any debt of such deceased member. The court
held the fund to be exempt from appropriation or seiz-
ure by a creditor of the beneficiary as well as of the
member, saying:

"From the language used in the statute under con-
sideration it is not only evident that the lawmakers
took special care to protect the fund created and set
apart in these associations and societies from demands
which might be asserted by creditors of deceased mem-
bers, but that they intended to and did go further in
the matter of protection and exemption. Having in
mind the worthy and benevolent design made so
prominent in organizations of this character, realizing
that the fund accumulated by assessment upon the
living was for the relief and assistance of the families
of deceased members, not for the benefit of creditors,
and appreciating undoubtedly, the unwisdom of pro-
hibiting the use of money in payment of debts con-
tracted by members, and at the same time allowing it

to be seized by the creditor of a beneficiary in payment of his debt, or otherwise allowing it to be diverted from coming into the hands of those for whom it was designed and created, the legislators expressly enacted that it should be exempt from execution, in addition to providing that no part should go to the creditors of the member. The object which seems to have been kept in view and to have been accomplished by the use of words which prevent the interposition of legal process whereby the money may be turned aside from a benevolent channel and placed in the hands of a creditor of a member, or of one of his family, a beneficiary, or even of a creditor of the association, was the relief and assistance, when most needed, of those for whom the fund was designed and created, the complete immunity of the fund itself from the process of the courts. Obviously the amount due upon the decease of a member has been placed beyond seizure for the debt of a member, or a beneficiary, or of the association itself.''

In *Fisher* v. *Donovan,* supra, the supreme court of Nebraska said:

''The laws of this State governing such societies preclude creditors of a member from participation in the fund so created. . . . These fraternal beneficiary socities, in their present form, are comparatively recent creations. They respond to a popular demand for protection to dependents at reasonable cost. They provide what is often called the 'poor man's insur-

ance.' In most, if not all, the primary object is to provide substantial benefits, in case of the death of the member, to the widow, orphans, or dependents of such member, to provide means for the family when the main support is gone. Their purposes are laudable. They provide means to maintain the widow, and feed, clothe, and educate the orphans, and thereby relieve the State of burdens which otherwise might fall upon it. The provisions for the creation and payment of these sacred funds to the properly designated beneficiaries should receive such liberal construction that the widow, the orphan, or other dependent may receive the intended benefit. In determining who is entitled to receive the benefits of the provisions of societies of this kind, it is the duty of the court to construe the statute and their rules and regulations liberally, and in such manner as to carry out the beneficent purposes sought to be accomplished.''

In view of what has been said it is very clear that as between ordinary life companies and the associations intended to be covered by the provisions of the act in question the classification is not capricious, unreasonable, or arbitrary. But it is said that such is the character of the classification as between such associations and other beneficial associations. In reply to this point we quote what was said by this court in *Condon* v. *Maloney,* 108 Tenn. (24 Pick.), 82-96, 65 S. W., 871, 874:

''But, while the courts frequently find and assign reason for legislative classification, yet it is by no

means uniformly so. And it does not follow, because the reason for the classification is not disclosed in the face of the act, that it is necessarily without reason and capricious. Reasons eminently wise and provident might control the lawmaking body which do not appear upon the face of a statute, and for the courts to strike it down because not readily perceptible might well be criticized as an act of judicial usurpation. Nor is there any abdication of constitutional duty or responsibility in this action.''

It is next insisted that section 12 unlawfully discriminates in favor of associations falling under the provisions of the act by permitting them to offer advantages to members which are denied to ordinary life companies, and to associations not organized under this act. The manifest answer, however, to this attack is that the act in question is a general act, and all of the rights, privileges, immunities, or exemptions allowed under it may be enjoyed by any ordinary life company, or any association not organized under the act in question which will abandon its former organization and do an insurance business by organization under the act in question and compliance with its terms, and therefore in this respect the act in question does not violate section 8 of article 11 or section 8 of article 1 of our Constitution.

It is next insisted that the act does not afford creditors the same measure of relief which they are afforded under other statutes. The answer to this point is that in the scheme of this act the creditor finds no

place; he is not named; his possible existence is recognized by section 12, but his most effective means of making his existance felt, to wit, "attachment, garnishment, or other process, legal or equitable," are paralyzed by the legislative department of the government on the high ground of public policy; that department of the government recognized in the business of insurance conducted by a fraternal benefit association, a charity so beneficial to the State as to demand, not only that the hand of the creditor be stayed, but that the soverign State should also forego its power to tax the lodge property and funds of a charity so benign in its influence. Akin to this legislation is section 4030, Shannon's Code, which provides:

"A life insurance effected by a husband on his own life shall inure to the benefit of the widow and next of kin, to be distributed as personal property, free from the claims of his creditors."

See, also, section 4231, Shannon's Code, which provides:

"Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the law of distributions, without being in any manner subject to the debts of the husband, whether by attachment, execution, or otherwise."

No doubt can exist as to the legislative power to treat the creditor with the scant consideration of which complaint is made in respect of section 12.

The next insistence is that by section 12 privileges are granted to associations falling under the operation of the act in question which are not accorded to all associations and corporations of the same class. This is a misconception of the effect of the act in question. It grants the same privileges to all associations which fall within the terms of the act. It does not purport to cover each and every kind of insurance business, but it does cover all insurance business conducted in this State by associations of the class falling within the terms of the act.

Passing now to certain questions which are based upon the provisions of section 32 of the act in question, that section provides:

"That nothing contained in this act shall be construed to affect or apply to grand or subordinate lodges of Masons, Odd Fellows, or Knights of Pythias (exclusive of the insurance branch of the Supreme Lodge Knights of Pythas) or to similar orders which do not issue insurance certificates, nor to local lodges of an association now doing business in this State, that provide death benefits not exceeding three hundred dollars to any one person, or disability benefits not exceeding three hundred dollars in any one year to any one person, or both, nor to domestic associations which limit their membership to the employees of a particular city or town, designated firm, business house, or corporation; the insurance commissioner may require from any association such information as will enable him to determine whether such association is exempt from

the provisions of this act.  No association which is exempt by the provisions of this section from the requirements of this act shall give or allow, or promise to give or allow, to any person any compensation for procuring new members."

There is nothing on the face of the act from which we can say that Masons, Odd Fellows, or Knights of Pythias lodges, or similar orders which do not issue insurance certificates, would fall within the operation of the act, even if section 32 had not been incorporated therein.  Nor can we say that the provisions of the act would have applied to domestic associations which limit their membership to the employees of a particular city or town, designated firm, business house, or corporation; indeed, we are inclined to the opinion that to such as these the act would not have applied if section 32 had not been incorporated therein, and therefore their exclusion would be innocuous; but, as concerns the exclusion by this section of "local lodges of an association now doing business in this State, that provide death benefits not exceeding three hundred dollars to any person, or disability benefits not exceeding three hundred dollars in any one year to any one person, or both," we think the exclusion may rest upon a sound and reasonable basis under the doctrine of classification purely upon the ground that on account of the limited amount of business done by such associations it was a proper exercise of the legislative power to classify so as to free such associations from the operations of the act, and the burdens and ex-

pense incidental thereto.    Certainly there is nothing appearing upon the face of the act to show that the exclusion of these small associations was arbitrary, unreasonable, or capricious classification, and. therefore, under the doctrine of the excerpt quoted supra from *Condon* v. *Maloney,* we think there is no merit in the insistence of appellant in respect of any question made upon the provisions of section 32 of the act in question.

We have discussed all of the questions which were of sufficient merit to warrant it.    We have considered all the questions made.    We overrule all assignments of error made by the bank, and it results that the decree of the chancellor is affirmed, and the garnishment proceeding is dismissed at the cost of the bank.