**CONSUMERS TIME CREDIT, INC.,**
a corporation,

v.

**REMARK CORP., a corporation, Lewis Bokser, individually, Maurice Kramer, Merit Metalcraft Corporation, a corporation, Liberal Sales Credit Co., a corporation, Sales Finco, Inc., a corporation, Reskob, Inc., a corporation, Lewis Bokser, Inc., a corporation, and Sara L. Bokser, Defendants,**

**Industrial Valley Bank and Trust Company, Central Penn National Bank, the Small Business Administration and Oxford Industrial Corporation, Garnishees.**

No. 34331.

United States District Court
E. D. Pennsylvania.

Nov. 16, 1965.
Supplemental Opinion Dec. 29, 1965.

2. Compare 4821, L.P.R.A.

Blank, Rudenko, Klaus & Rome, by
Henry J. Morgan, Abrahams & Loewen-

**160**

stein, by Bernard Axelman, Philadelphia, Pa., for plaintiffs.

Laurence H. Eldredge, Philadelphia, Pa., for Lewis Bokser, individually and trading as Durabilt Paving Co., defendants.

Vincent P. Haley, Philadelphia, Pa., for garnishee; Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., of counsel.

JOSEPH S. LORD, III, District Judge.

This action was begun by a writ of fraudulent debtor's attachment. The writ directed the marshal to attach the personal property of the corporate defendants, and of Lewis Bokser and Sara L. Bokser. The final paragraph of the writ directed the attachment of

"all other personal property of Remark Corp., a corporation, Lewis Bokser, Individually and Lewis Bokser, Individually and trading as Durabilt Paving Co., Maurice Kramer, Merit Metalcraft Corporation, a corporation, Liberal Sales Credit Co., a corporation, Sales Finco, Inc., a corporation, Reskob, Inc., a corporation, Lewis Bokser, Inc., a corporation and Sara L. Bokser."

The petition of the defendants Lewis and Sara L. Bokser to *dissolve* the attachment has previously been denied. 227 F.Supp. 263 (E.D.Pa.1964). They now petition to have certain life insurance policies and the proceeds of the sale of a bond and mortgage released from the attachment.

The life insurance policies name Lewis Bokser as the insured and Sara L. Bokser, his wife, as the beneficiary. Petitioners contend that the policies are exempt from attachment by virtue of the Act of June 28, 1923, P.L. 884, No. 335, § 1, 40 P.S. § 517, which provides as follows:

"The net amount payable under any policy of life insurance or under any annuity contract upon the life of any person, heretofore or hereafter made for the benefit of or assigned to the wife or children or dependent relative of such person, shall be exempt from all claims of the creditors of such person arising out of or based upon any obligation created after the passage of this act, whether or not the right to change the named beneficiary is reserved by or permitted to such person."

The purpose of this statute is to provide the widow and family of an insured with a fund for their maintenance, clear of the claims of creditors. See In re Lang, 20 F.2d 236 (E.D.Pa. 1927), aff'd. Dussoulas v. Lang, 24 F.2d 254 (C.A.3, 1928). This the plaintiff concedes, but it argues that the statute is inapplicable where both husband and wife are the debtors.

This appears to be the first time this question has been presented under the Pennsylvania statute. Elsewhere, most courts which have considered the question under similar statutes have long held that the policies are exempt even from the claims of creditors of the beneficiary. Dellefield v. Block, 40 F.Supp. 616 (S.D.N.Y.1941); Holmes v. Marshall, 145 Cal. 777, 79 P. 534, 69 L.R.A. 67 (1905); Bowman v. Wilkinson, 153 Cal.App.2d 391, 314 P.2d 574 (1957); Brown v. Balfour, 46 Minn. 68, 48 N.W. 604, 12 L.R.A. 373 (1891).

The exemption conferred by the Pennsylvania statute extends specifically only to the "claims of the creditors of such person," and "such person" refers to the insured. In some instances, such as in the Holmes, Bowman and Brown cases, supra, the statutes have simply provided that policies and proceeds are to be exempt from execution, without reference to whose creditors are affected. The courts have considered that terminology sufficient to prevent execution even where the beneficiary is a party to the debt.

In other instances, however, the statutory language has been similar to the wording of the Pennsylvania statute. In Dellefield v. Block, supra, for example, the New York statute by its terms exempted the proceeds of life insurance contracted for the benefit of another

only from the claims of creditors of the insured. Notwithstanding the restrictive statutory language, policies procured by a husband on his own life and in favor of his wife were held to be exempt from execution by their joint judgment creditor. The statute so construed in Dellefield was modeled on the Massachusetts and Pennsylvania life insurance exemption statutes, including the very section in issue in the case at bar. See Chatham Phenix Nat. Bank & Trust Co. v. Crosney, 251 N.Y. 189, 167 N.E. 217 (1929). The purpose of the Pennsylvania statute is the same as that of the life insurance exemption statutes of other states, which have been construed to accord the beneficiary protection against her own creditors as well. We think it would be destructive of the benevolent policy of this statute to permit the creditor of the insured or of the beneficiary, or of both, to reach the policies or their cash value.

Plaintiff argues that to hold these policies exempt would be to give fraudulent debtors an opportunity to build up a fund which would be beyond the reach of creditors. That the statute is capable of some abuse by unscrupulous debtors probably cannot be gainsaid. But interpreting it so as to exempt the policies from creditors of both the insured and the beneficiary does not so greatly increase the risk of abuse as to outweigh the more uniform effectuation of legislative purpose it would accomplish. To prevent a creditor of the beneficiary from reaching the insurance proceeds where the debt has been incurred by the beneficiary *after* the receipt of the proceeds would present altogether different problems of administration and of postmortem fraud and improvidence. These problems might require a different result. See Recor v. Recor, 142 Mich. 479, 106 N.W. 82, 5 L.R.A.,N.S., 472 (1905); Reiff v. Armour & Co., 79 Wash. 48, 139 P. 633, L.R.A.1915A, 1201 (1914). But they are not involved in the instant case: since the insured is still alive, the obligation, if any is finally found, was obviously incurred before the distribution of the proceeds of the policies.

We are bound to construe this statute as the Pennsylvania courts would. It is impossible to be sure just how the Pennsylvania courts would construe this particular provision, but we do know that statutes granting exemptions from the claims of creditors are to be construed liberally because of their benign motivation. Maschke, to Use of Ehnes v. O'Brien, 142 Pa.Super. 559, 17 A.2d 923 (1941); Bell's Estate, 139 Pa.Super. 11, 10 A.2d 835 (1940). Our interpretation is certainly not out of harmony with Pennsylvania's construction of similar exemption statutes. See Beall Estate, 384 Pa. 14, 17, 119 A.2d 216, 54 A.L.R. 2d 1329 (1956) (Dictum); Ogle v. Barron, 247 Pa. 19, 92 A. 1071 (1915); Kruczaj v. Komar, 24 Pa.Dist. & Co. 211 (C.P.1935). In the Kruczaj case, the statute expressly applied to debts incurred by the beneficiary, but we have no reason to think that the variant wording of the instant statute was by legislative design or that it should dictate a different result.

Finally, plaintiff has suggested that before these policies are deemed exempt, there must be a determination that they are in fact genuine contracts of insurance intended to benefit the wife, and not subterfuges actually designed to benefit the husband. Plaintiff has not, however, given us any factual reason for suspecting that the policies in question are anything but insurance policies on the life of the husband, payable to the wife. In these circumstances, In re Bowers, 11 F.Supp. 848 (E.D.Pa., 1934), cited by the plaintiff, is simply inapplicable and the policies qualify for the exemption. In re Lang, supra; In re Rose, 24 F.2d 253 (E.D.Pa., 1927), aff'd, Dussoulas v. Lang, 24 F.2d 254 (C.A.3, 1928).

The remaining questions relate to the attached proceeds of a bond and mortgage owned by Lewis and Sara L. Bokser jointly. This property is presumptively owned by the husband and wife as tenants by the entireties. Nachman v. Nachman, 417 Pa. 389, 208 A.2d 247 (1965). Plaintiff has alleged that

the property was actually owned by the Boksers, not as tenants by the entireties, but as partners. Plaintiff has adduced no facts to support this conclusory allegation, and in the absence of facts to rebut the presumption, we are obliged to treat the bond and mortgage as entireties property.

■ It is settled that entireties property may be reached by creditors to satisfy the joint debts of the husband and wife. Swope v. Turner, 193 Pa.Super. 217, 220, 163 A.2d 714 (1960); Bank of Erie v. LaJohn, 27 Pa.Dist. & Co. R.2d 705 (C.P.1962); Budget Plan v. Hicks, 25 Pa.Dist. & Co. R.2d 365 (C.P.1961). It only remains to determine whether the writ is broad enough to reach jointly-held property and whether the complaint sufficiently states a joint claim against husband and wife. See A. Hupfel's Sons v. Getty, 299 F. 939 (C.A.3, 1924).

■ The writ of fraudulent debtor's attachment, as we have seen, purports to attach all the personalty of Lewis and Sara L. Bokser. Both parties concede that a bond and mortgage, at least as to third parties, are personalty. Gallagher v. Rogan, 322 Pa. 315, 318, 185 A. 707 (1936); Harper v. Consolidated Rubber Co., 284 Pa. 444, 451, 131 A. 356 (1925). There is, therefore, no reason, if the complaint furnishes the underlying support, why the attachment should not include personalty held jointly as tenants by the entireties, such as the bond and mortgage here in question.

■ This court, through Judge Kraft, has held in an earlier proceeding in this case that the acts and conduct of Remark Corp. alleged in the complaint are those of Remark's principals, whom the affidavits disclose to be Lewis and Sara L. Bokser. 227 F.Supp. 263, 266 (E.D.Pa., 1964). That is, as the court ruled, enough to justify the attachment of the Boksers' individual property. But to sustain the attachment of entireties property, Remark's alleged transactions which form the basis of the cause of action must have been participated in jointly by both husband and wife. A. Hupfel's Sons v. Getty, supra.

■ Because of the notice pleading system that prevails in the federal courts, it is difficult to be absolutely certain from the complaint that joint participation is alleged with any specificity. The amended complaint does, however, allege in paragraph 5 an "unlawful conversion and fraudulent diversion by defendant [Remark] of merchandise and proceeds of at least 85 of the accounts receivable and/or chattel paper transactions assigned by defendant to plaintiff, constituting a conversion and diversion of approximately $45,000.00 worth of the collateral assigned to plaintiff as security." Paragraph 17 of the amended complaint avers that "Remark Corp. *and its principals*" (emphasis supplied) have "concealed or transferred * * * property or proceeds thereof in which the plaintiff has a security interest pursuant to the provisions of the Pennsylvania Uniform Commercial Code." Paragraph 17 appears to refer to the "accounts receivable and/or chattel paper transactions" alleged in paragraph 5 to have been converted by Remark, and thus by the Boksers. These two paragraphs, then, taken together sufficiently state joint acts on the part of Lewis and Sara L. Bokser so as to subject their entireties property to a fraudulent debtor's attachment at the instance of an alleged creditor of the two jointly. Since this is so, it becomes unnecessary for us to determine whether a complaint which states a cause of action against a corporation whose acts must be regarded as those of its two principals would, without more, support an inference of joint acts sufficient to sustain an attachment of entireties property.

Accordingly, life insurance policies in which Lewis Bokser is the insured and Sara L. Bokser or children or dependent relatives are named as beneficiaries must be released from the attachment, but the proceeds of the sale of the bond and mortgage must remain attached. The petition is, therefore, granted in part and denied in part.

Supplemental Opinion

In my opinion of November 16, 1965, I concluded that "life insurance policies in which Lewis Bokser is the insured and Sara L. Bokser or children or dependent relatives are named as beneficiaries must be released from the attachment, but the proceeds of the sale of the bond and mortgage must remain attached." The parties are unable to agree on the form the order should take. To effectuate the decision rendered at that time, I have decided, upon briefs and argument, that the doctrine of marshaling of assets is applicable in the instant situation.

" * * * The marshaling doctrine may be stated as follows: when one creditor has a claim against two funds as security and another creditor has a claim against only one of these funds, the claim of the former must be first satisfied out of that fund which is security for his loan only. * * * " American Nat. Ins. Co. v. Vine-Wood Realty Co., 414 Pa. 263, 269, 199 A.2d 449, 454 (1964).

That, of course, is exactly the situation in the case at bar. Here one creditor, the Industrial Valley Bank, has a claim against two funds as security, viz., the pledged life insurance policies and the proceeds of the sale of the bond and mortgage. Since the policies "must be released from the attachment," another creditor, Consumers Time Credit, Inc., now has a claim against only one of these funds.

Counsel for the petitioners has advanced two reasons why the marshaling doctrine ought not to be invoked: (1) Marshaling "is never applied when it will bring about an unjust or inequitable result", Miller Lumber & Coal Co. v. Berkheimer, 342 Pa. 329, 331, 20 A.2d 772, 773, 135 A.L.R. 736 (1941); and (2) the doctrine is waived if there is no "seasonal assertion of it," American Nat. Ins. Co. v. Vine-Wood Realty Co., supra, 414 Pa. at 271, 199 A.2d at 455.

In the context of this case, neither of these considerations is applicable. In Miller Lumber, the debtor against whose security marshaling was to be used was only a surety, and not the principal debtor. In this case, it is undisputed that the Boksers were joint debtors. Here, the result of failing to require marshaling would itself be inequitable, for it would release the policies not merely from the attachment, from which I have held them exempt, but also from the pledge. It would permit the senior lienor, the bank, to proceed against the bond and mortgage proceeds and allow it to defeat the valid attachment of them by the plaintiff. The policies were pledged voluntarily. In that transaction, the statutory exemption of 40 P.S. § 517 was waived. There is no equitable reason for me to refrain from applying the marshaling of assets doctrine.

I reach the same conclusion on the waiver issue. In Vine-Wood, the first assertion of the right to marshaling occurred six months after the foreclosure sale distributing the funds. There it was held that " * * * appellants having failed to make timely exceptions based on the applicability of the marshaling doctrine, they have waived the right to now raise it. * * * " 414 Pa. at 271, 199 A.2d at 455. Here, however, the fund has not yet been distributed; there is no claim of prejudice; the garnishee raised the issue long ago by refraining from satisfying its debts out of the bond and mortgage proceeds solely because of the marshaling doctrine; and even the petitioners' brief concedes that "[b]ecause of the marshalling of assets doctrine, injected into the case by the plaintiff's writ, Garnishee did not use the balance of the mortgage proceeds to satisfy the petitioners' remaining loan." Marshaling has been in this case all along, and I find no effective waiver.

I adopt substantially the same order as was submitted by counsel for the plaintiff on December 17, 1965.