## American National Insurance Company v. Vine-Wood Realty Co., Appellant.

264

Argued November 21, 1963. Before Bell, C. J., Musmanno, Jones, Cohen, O'Brien and Roberts, JJ.

*Louis F. Floge,* with him *James M. Richardson,* and *Schnader, Harrison, Segal & Lewis,* for appellants.

*Joseph R. Ritchie, Jr.,* Assistant United States Attorney, with him *Drew J. T. O'Keefe,* United States Attorney, *Edward N. Barol,* and *Creskoff, Riely & Barol,* for appellees.

Opinion by Mr. Justice Cohen, April 21, 1964:

This appeal challenges the order of the court below directing payment to the United States of its lien for unpaid income taxes out of the proceeds of a foreclosure sale.[1]

---

[1] Appellees move to quash this appeal on the ground that it was taken 21 days after the order of the court below was entered, in violation of the Act of June 16, 1836, P. L. 755, §89, 12 P.S. §2667, which provides for a 20 day period in which to appeal from a decree "in any case of distribution without the intervention of

On January 27, 1954, appellees Richmans, acquired an undivided one-half interest in the Broadwood Hotel. On April 4, 1955, the property became subject to a first mortgage. On September 24, 1955, appellee United States, pursuant to a favorable tax court decision, filed a tax lien against the Richmans for a deficiency in their 1948 income taxes in the amount of $35,778.59. On June 2, 1958, a second mortgage was created on the hotel which was subsequently assigned to appellant Goldberg. On July 20, 1959, the Richmans conveyed the premises to appellant, Vine-Wood Realty Co. On August 25, 1960, a judgment lien was acquired against the property by appellant, Pennsylvania Laundry Co. (Laundry). On October 6, 1960, the United States filed another tax lien against the Richmans based on an assessment of their unpaid income taxes for 1959 in the amount of $8,826.63.

Meanwhile, Richmans had acquired certain securities which they deposited with the Liberty Real Estate Bank and Trust Co. (Bank) as collateral for a loan. Two notices of levy and final demand were served by the United States on Bank on February 9, 1960, and August 25, 1961. The first was based on the Richmans' 1948 unpaid taxes and the second on their 1959 unpaid taxes. On September 12, 1961, solely as a result of an oral request from Richmans, the United States wrote a letter to Bank agreeing to the liquidation of the collateral security. Pursuant to the terms of the letter, (1) Bank sold the securities between October 26 and December 1, 1961 and (2) liquidated

a jury." This statute has been superseded by the General Appeals Act of May 19, 1897, P. L. 67, §4, as amended, 12 P.S. §1136, which provides for a three month appeal period. Section 22 of this Act (12 P.S. §1161) specifically repeals several enumerated enactments and all other acts pertaining to the subject matter of the Act. The 1836 statute is certainly included in this latter group. The motion to quash is therefore denied.

its loan of $36,133.67; (3) a certificate of deposit of $36,133.57 was created on November 24, 1961, retained by Bank and made subject solely to the tax claims of the United States; (4) the balance was then paid to Richmans.

The first mortgagee on the hotel instituted foreclosure proceedings on the property on June 24, 1960 and judgment was entered for him on July 19, 1960. The property was sold on May 1, 1961 for $1,106,000. Appellants filed exceptions to the sheriff's proposed order of distribution of these proceeds on September 1, 1961 based on the "amount, validity, and priority of lien of United States of America v. Joseph A. Richman and Rosaline D. Richman."[2]

On October 3, 1961, the United States petitioned the court below to have the sheriff distribute the proceeds of the foreclosure sale in payment of the lien for the Richmans' unpaid 1948 income taxes. Appellants opposed the petition on the grounds that (1) the creation of the certificate of deposit constituted payment to the United States of its 1948 tax lien and (2) if it did not, appellants were entitled to have this tax lien first satisfied out of the certificate of deposit in accordance with the doctrine of marshaling of assets.[3] These objections were overruled and the petition was granted. This appeal followed.[4]

---

[2] It is to be noted that these events concerning the mortgage foreclosure took place before the above-mentioned liquidation of security arrangement was agreed to and carried out and before any request for marshaling had been made.

[3] On October 27, 1961, appellants filed an answer and new matter asserting the existence of the securities pledged as collateral and raising the question of marshaling for the first time. Following the liquidation of the collateral security and the creation of the certificate of deposit, appellants filed an amended answer alleging that the 1948 tax lien had been paid thereby.

[4] The liens on the two funds involved here in order of time of their perfection may be diagrammed as follows:

Appellants assert that the equitable doctrine of marshaling requires the United States to satisfy its 1948 tax lien out of the certificate of deposit upon which it alone has a lien, leaving the proceeds of the foreclosure sale available for satisfaction of the claims of Goldberg and Laundry.[5]

In determining the applicability of the marshaling principle to the present facts, it is first necessary to establish whether this question is governed by Pennsylvania or federal law. In *Aquilino v. United States,* 363 U.S. 509 (1960), the United States Supreme Court laid down the following guidelines for determining the proper spheres of state and federal law in cases involving the competing claims of the United States as in-

---

Before Nov. 24, 1961 (date of creation of certificate of deposit)

| *Foreclosure Proceeds* | *Richmans' Securities* |
| --- | --- |
| United States—1948 Income Taxes | Bank Loan |
| Goldberg Second Mortgage | United States—1948 Income Taxes |
| Laundry Judgments | |
| United States—1959 Income Taxes | United States—1959 Income Taxes |

After Nov. 24, 1961

| *Foreclosure Proceeds* | *Certificate of Deposit* |
| --- | --- |
| United States—1948 Income Taxes | United States—1948 Income Taxes |
| Goldberg Second Mortgage | United States—1959 Income Taxes |
| Laundry Judgments | |
| United States—1959 Income Taxes | |

[5] In its motion to strike appellants' new matter raising the question of marshaling, the government contended that Rule 3136(f), Pa. R. C. P. does not provide for the type of proceeding necessary for a resolution of this issue. The court below apparently did not rule on this motion. Although marshaling is a principle of equity, it may be raised in any action at law. See *Bugen v. New York Life Insurance Company,* 408 Pa. 472, 475, 184 A. 2d 499, 501 (1962).

come tax collector and other creditors to the assets of the taxpayer: "[A]s we held only two Terms ago, Section 3670 'creates no property rights but merely attaches consequences, federally defined, to rights created under state law. . . .' United States v. Bess, 357 U.S. 51, 55. However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's 'property' or 'rights to property.'. . . . The application of state law in ascertaining the taxpayer's property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes." 363 U.S. at 513-514. It is undisputed (as to appellants' marshaling contention) that the United States has a valid lien for 1948 income taxes on both the proceeds of the foreclosure sale and the certificates of deposit and had a lien on the predecessor of the latter—the securities held by Bank as collateral for its loan to the Richmans. Hence, the sole question for our determination is one involving the reconciliation of "claims of competing lienors." The applicability of federal law is therefore clear.

Next we are confronted with the question of the applicability of the marshaling doctrine to collection of federal income taxes. In the recent case of *Meyer v. United States*, 11 L. ed. 2d 293 (1963), the United States Supreme Court stated that it had never applied the principle of marshaling to federal income tax liens, nor had Congress laid down any rule with reference to the application of the doctrine (11 L. ed. 2d at 297).

In *Meyer,* the United States attempted to invoke marshaling in its own favor. Apparently assuming that the doctrine did apply where asserted in the government's behalf, the majority of the Court held that no second fund was available for marshaling and decided against the government's contention. It is to be noted that the United States Supreme Court has not as yet been faced with a case in which marshaling was sought *against* the federal government in an income tax case, although the lower federal courts have been so confronted and have disagreed on the doctrine's applicability. Compare *United States v. Lord,* 155 F. Supp. 105 (N.H. 1957) and *In Re Ann Arbor Brewing Co.,* 110 F. Supp. 111 (E.D. Mich. 1951) with *Kelley Kar Company v. U. S.,* 56-1 U.S.T.C. Par. 9481 (S.D. Calif., 1956).

It is not necessary for us to speculate on what the Supreme Court will do when finally called upon to resolve this issue, for it is clear that this is not a case in which marshaling may be invoked.

The marshaling doctrine may be stated as follows: when one creditor has a claim against two funds as security and another creditor has a claim against only one of these funds, the claim of the former must be first satisfied out of that fund which is security for his loan only. *United States v. Behrens,* 230 F. 2d 504, 507 (2d Cir. 1956). "It is founded . . . in equity, being designed to promote fair dealing and justice. Its purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security."[6] *Meyer v. United States, supra,* 11 L. ed. 2d at 297. However, the credi-

---

[6] At the outset it is difficult for us to see how the action of the United States in pursuing its rights in the proceeds of the foreclosure sale can be labeled arbitrary, for it was the first mortgagee and not the United States which instituted the foreclosure proceedings and necessitated the action which the United States has here taken.

tor who seeks to invoke marshaling must show that the rights of his co-creditor will be neither endangered nor injuriously delayed, and that there is no reasonable doubt of the availability of another fund to satisfy his co-creditor's demand. 35 Am. Jur., Marshaling Assets & Securities, §7. Furthermore, these conditions must be shown to have existed at the time the common fund became available for distribution. Otherwise, the junior creditors would be tempted to delay distribution of the common fund as long as possible in hopes that the requirements for marshaling could be subsequently fulfilled. Appellants have failed to make such a showing.

The proceeds of the foreclosure sale were available for distribution on May 1, 1961. On that date the lien of the United States attached to the securities of the Richmans held by Bank, for the liquidation arrangement had not as yet been entered into. Bank had a first lien on these securities. As the court below aptly stated, "At the time of the sale of the hotel there was no evidence the United States' 1948 tax lien was or could be satisfied by its levy on the securities held by the bank, since it was subject to a prior lien of the bank." Hence, there has been no demonstration by appellants that at the time the common fund was available for distribution there existed a second fund which was clearly available to satisfy the claim of the United States.

The creation subsequent to the foreclosure sale of the certificate of deposit, upon which the United States admittedly has the sole lien and which is sufficient to satisfy the 1948 tax assessment, did not create a right to marshal. As stated above, the right to marshal must exist at the time the common fund is available for distribution. The subsequent creation of the certificate of deposit is therefore of no consequence. To hold otherwise would, as indicated, defeat the equitable considerations underlying the marshaling doctrine by

causing delay in distribution of the common fund to inure to the benefit of junior lienors.

Moreover, even had the securities held by Bank constituted a good second fund at the time of the foreclosure sale, by failing to raise the question of marshaling promptly thereafter appellants waived the right to invoke the doctrine. The proposed schedule of distribution of the foreclosure proceeds was filed by the sheriff on February 10, 1961. The sale took place on May 1, 1961. Exceptions to the "amount, validity, and priority" of the United States lien were filed on September 1, 1961. Appellants did not raise their alleged right to marshaling until October 27, 1961 in their answer and new matter to the petition by the United States commencing this action. This was almost six months after the foreclosure sale. The right to marshal is inchoate in nature and is therefore subject to displacement. *Fidelity & Casualty Co. of New York v. Mass. Mut. Life Ins. Co.*, 74 F. 2d 881 (4th Cir. 1935) ; 35 Am. Jur., supra, §5. The invocation of the doctrine is dependent upon a seasonal assertion of right by the junior lienor. 35 Am. Jur. §5, supra. Otherwise, junior lienors could cause delay in the distribution of the common fund to the prejudice of senior lienors. Hence, appellants having failed to make timely exceptions based on the applicability of the marshaling doctrine, they have waived the right to now raise it.

Appellants also argue that the conversion of the securities held by Bank into a certificate of deposit at the disposal of the United States constituted payment of the 1948 tax lien. We do not agree. There is nothing in the record to indicate that this was the intention of either the United States or the Richmans in entering this transaction. Furthermore, the fact that the letter of the United States to Bank specifically requested at the behest of the Richmans that the certificate

of deposit be made available for payment of all claims of the United States against the Richmans clearly negates the appropriation of the fund to the 1948 tax debt. The result of the creation of the deposit was therefore only to shift the lien of the government from the securities to the deposit.

The fact that the United States has the sole lien on the certificate of deposit and can reach it at any time to satisfy its claims against the Richmans does not in any way aid appellants in their assertion of payment. Although a senior lienor may in a proper case be compelled to look to one fund rather than another to satisfy a claim, a court may never require a senior lienor to liquidate his lien security and thereby force him to satisfy his claim. See *Kendig v. Landis,* **135** Pa. 612, 619, 190 A. 1058 (1890).

The United States being clearly entitled to have the sheriff distribute the proceeds from the sale of the hotel in payment of its lien for the Richmans' unpaid 1948 income taxes, the order of the court below is affirmed.

Order affirmed.