**In re David J. WEISS, Debtor.**

**Bankruptcy No. 82–04780G.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Nov. 14, 1983.

Robert Lapowsky, Rubin, Quinn & Moss, Philadelphia, Pa., for debtor, David J. Weiss, and Intern. Military Supply Co.

Arthur S. Klein, Iovine & Woods, Philadelphia, Pa., for objecting creditor, Kathy Kindquist.

James J. O'Connell, Philadelphia, Pa., standing Chapter 13 trustee.

EMIL F. GOLDHABER, Bankruptcy Judge:

The troublesome issue confronting us in this chapter 13 case is whether the debtor's plan should be confirmed. Since we find that said plan satisfies the requirements of section 1325(a) of the Bankruptcy Code ("the Code"), we will deny the creditor's objections and confirm said plan.

The facts of the instant case are as follows:[1] On October 6, 1982, David J. Weiss ("the debtor") filed a petition for an adjustment of his debts under chapter 13 of the Code. On October 15, 1982, the debtor filed his original chapter 13 statement and plan which the debtor subsequently amended on December 15, 1982, the date on which the original confirmation hearing was scheduled. The filing of the aforesaid amendment caused the confirmation hearing to be rescheduled for January 27, 1983. Prior thereto, on January 4, 1983, Kathy G. Kindquist ("the objecting creditor") filed an objection to the debtor's amended plan. The objecting creditor has a claim for rental arrearages arising under a lease entered into between her and International Military Supply Co., Inc. ("International"), a corporation in which the debtor is the president and sole stockholder. International filed a petition for reorganization under chapter 11 of the Code on September 28, 1982. Therefore, while the objecting creditor's claim stems from the aforesaid lease with International, it is undisputed that the debtor personally guaranteed International's obligation under said lease. Consequently, the objecting creditor is a creditor of both the debtor and International and she is listed as such in both bankruptcy proceedings. Likewise, Continental Bank ("the bank"), which had entered into a loan transaction with International, had obtained a mortgage against the debtor's residence as security for said loan. Hence the bank is both a secured creditor of the debtor and a secured creditor of International.

The objecting creditor contends initially that the debtor has proposed his plan in bad faith, thus requiring a determination by this court that confirmation of said plan be denied.[2] In support of her position, the objecting creditor asserts that the debtor's plan, which provides for only a five-percent (5%) payment to unsecured creditors, is, *in and of itself,* proposed in bad faith.[3] Accordingly, we reject the debtor's contention and agree with the weight of authority generally holding that chapter 13 plans providing for nominal repayment

---

**1.** This opinion constitutes the findings of fact and conclusions of law required by Bankruptcy Rule 7052 (effective August 1, 1983).

**2.** Section 1325(a) of the Code provides:

(a) The court shall confirm a plan if—

(1) the plan complies with the provision of this chapter and with other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law.

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(f) with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder; and

(6) the debtor will be able to make all payments under the plan and to comply with the plan.

11 U.S.C. § 1325(a) (1979).

Section 1325, on its face, does not establish a minimum permissible payment. However, § 1325(a)(3) requires that the plan be "proposed in good faith."

**3.** *Black's Law Dictionary* defines "bad faith" as "generally implying or involving actual or constructive fraud or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation ... prompted by ... some interested or sinister motive." "Bad faith" is not defined in the Code.

plans are not, *per se,* proposed in bad faith and, hence, invalid.[4] Rather, we hold that the "good faith" requirement for confirmation of a chapter 13 plan does not necessarily require substantial repayment to the unsecured creditors. The "good faith" standard must be viewed in light of the totality of the circumstances applied on a case-by-case basis. In the case *sub judice,* we have considered each of the objecting creditor's allegations of bad faith and we conclude that said allegations fall far short of requiring a denial of confirmation.[5] Moreover, the discrepancies relied on by the objecting creditor as being an indicia of bad faith have been explained and corrected to our satisfaction and the fate of the unsecured creditors has not changed as a result thereof. In addition, we find it dispositive that the objecting creditor has not attacked the debtor's budget and has not proven that the debtor has the ability to pay a greater percentage than what he has proposed. Consequently, we conclude that the instant plan meets the good faith requirement of section 1325(a)(3).[6]

■ The crux of the objecting creditor's next argument, as we see it, is that the obligation owing to the bank, which is provided for by the debtor's chapter 13 plan, is presently being satisfied in the chapter 11 proceeding of International. In support thereof, the objecting creditor relies on the debtor's testimony, which, in pertinent part, provides:

Q  Who are you employed by?

A  International Military Supply

Q  That is a corporation?

A  Yes, it is.

Q  And you are the sole shareholder?

A  Right.

Q  That corporation is presently in a chapter 11 proceeding?

A  Right.

Q  Has a first meeting of creditors been held in that proceeding?

A  No.

Q  Has a plan been presented as yet in that proceeding?

A  It is being formed at the present time.

Q  You stated, or in your exhibit you show you owe Continental Bank a secured debt of $39,000; is that correct?

A  Sounds right.

Q  How much money do you actually owe Continental Bank?

A  Now?

Q  Correct.

A  I have been paying them. I'd say approximately almost the same.[7]

4.  *See Public Finance Corp. v. Freeman,* 712 F.2d 219 (5th Cir.1983); *Lawrence Tractor Co. v. Gregory (In re Gregory),* 705 F.2d 1118 (9th Cir.1983); *Deans v. O'Donnell (In re Deans),* 692 F.2d 968 (4th Cir.1982); *Goeb v. Heid (In re Goeb),* 675 F.2d 1386 (9th Cir.1982); *Barnes v. Whelan (In re Barnes),* 689 F.2d 193 (D.C.Cir. 1982). *See also In re Scher,* 12 B.R. 258 (Bkrtcy.S.D.N.Y.1981).

5.  The objecting creditor additionally contends that the debtor's inclusion in his schedules of a debt allegedly owing to his mother's estate but which, in actuality, had been forgiven in his mother's will, and the debtor's exclusion from his schedules of a bequest under the aforesaid will, are a further evidence of the debtor's bad faith. We are convinced that any errors that the debtor might have committed in preparing his schedules were made through inadvertance rather than by design. If anything, we find that the debtor has exhibited good faith by amending his schedules as these mistakes were

uncovered. Finally, we find no merit in the objecting creditor's contention that the debtor has demonstrated bad faith by under-estimating the value of certain assets. The relatively minute discrepancies between the debtor's valuations and the objecting creditor's suggested valuations are more the reflection of an honest difference of opinion than a conscious scheme to deceive.

6.  The objecting creditor also argues that if the debtor's estate were liquidated under chapter 7 of the Code, the unsecured creditors would receive more than a 5% distribution. A review of the record establishes that even if the objecting creditor's evaluations of the debtor's assets and liabilities are accepted, any equity resulting therefrom would be exhausted because of the amount of undisputed priority claims against the debtor.

7.  *See* notes of testimony, January 27, 1983, at 23.

The status of the debt owing to the bank bears significance in the instant case because if it was established that said debt was being satisfied in the chapter 11 proceeding of International, then the bank's claim against the debtor's residence would be extinguished, with the result that there would be equity in said residence which would be available for distribution to the debtor's unsecured creditors. However, we cannot conclude, on the current state of the record, that the bank's claim is being satisfied in the chapter 11 proceeding. The objecting creditor produced no evidence, other than the aforementioned testimony of the debtor, establishing that International is presently paying the bank. The debtor's testimony ("I have been paying them"), standing alone, does not meet the objecting creditor's burden of proof in this regard. No chapter 11 documents were moved into evidence at the trial of the instant matter.[8] Therefore, we conclude that the debt owing to the bank by the debtor is justifiably included in the debtor's chapter 13 schedules and plan, albeit to the detriment of the debtor's unsecured creditors. The bank is entitled to but one satisfaction of its debt and if this is to be accomplished in the chapter 13 proceeding, then the bank would no longer have a claim in the chapter 11 bankruptcy of International. The objecting creditor, who is also a creditor of International, could pursue its remaining claim for rental arrearages in the chapter 11 proceeding.

 Finally, we are unable to find any basis in the record for invoking the doctrine of marshaling of assets which, under appropriate circumstances, could be applied to require the bank (the paramount creditor) to satisfy its debt from a source other than the debtor's chapter 13 assets. As Judge

Twardowski stated in *Small Business Admin. v. Friend (In re A.E.I. Corp.)*, 11 B.R. 97 (Bkrtcy.E.D.Pa.1981):

> Generally, three elements must be present in order for a court of equity to invoke the marshaling doctrine: 1) the existence of two creditors with a common debtor; 3) the existence of two funds belonging to the debtor; 3) the legal right of one creditor to satisfy his demand from either or both of the funds, while the other may resort to only one fund (citations omitted).

11 B.R. at 99.

The objecting creditor, once again, has failed to prove that the three elements necessary to invoke the marshaling doctrine exist. Based on all the above, we will deny the creditor's objection to confirmation of the debtor's plan.

---

8. In *In re Aughenbaugh*, 125 F.2d 887 (3d Cir. 1942), the Court of Appeals for the Third Circuit held:

> In passing upon this question [the debtor's insolvency] we may consider only the evidence which was presented to the referee at the hearing upon the trustee's exceptions to the mortgagee's priority claim. We may not consider other evidence which may have been in the files of the referee in the bankruptcy administration proceeding. To hold otherwise would be to violate the fundamental concept of procedural due process that a party to litigation is entitled to have the evidence relied on by his opponent presented at the hearing of his case so that he may have opportunity to cross-examine his opponent's witnesses and to offer evidence in rebuttal.

125 F.2d at 889.