**In re HIGH STRENGTH STEEL, INC., Debtor.**

**The Official Committee of Unsecured Creditors of High Strength Steel, Inc. on behalf of the Estate of High Strength Steel, Inc., Plaintiff,**

**v.**

**Gerald J. Lozinski, High Strength Holding Company, Inc., Strength Properties, Inc., and PNC Bank, National Association, Defendants.**

**Bankruptcy No. 99–4369(MFW).**
**Adversary No. 00–424(MFW).**

United States Bankruptcy Court,
D. Delaware.

Aug. 2, 2001.

Neil Glassman, The Bayard Firm, Wilmington, DE, Charles Long, Long & Puchot, Houston, TX, for Debtor.

Jeoffrey L. Burtch, Cooch & Taylor, Wilmington, DE, Chapter 7 Trustee.

William P. Bowden, Ashby & Geddes, Wilmington, DE, for Official Committee of Unsecured Creditors.

Mark Minuti, Tara L. Lattomus, Saul Ewing, LLP, Wilmington, DE, John F. Higgins, Betty Bradley, Porter & Hedges, LLP, for Gerald Lozinski, High Strength Holding Co., and High Strength Properties, Inc.

Judith Nichols Renzulli, Duane, Morris & Heckscher, LLP, Wilmington, DE, Margery N. Reed, John J. Soroko, Duane, Morris & Heckscher, LLP, Philadelphia, PA, for PNC Bank, N.A.

### MEMORANDUM OPINION[1]

MARY F. WALRATH, Bankruptcy Judge.

■ Before the Court are the Motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure of (1) Gerald Lozinski ("Lozinski"), High Strength Holding Company ("Holding"), and High Strength Properties, Inc. ("Properties") to dismiss eighteen counts of the Complaint,[2] and (2) PNC Bank, N.A. ("PNC") to dismiss two counts of the Complaint. We grant the PNC Motion as to Count 22. We deny the motions with respect to the other counts.

### I. BACKGROUND[3]

Defendant Lozinski is the CEO and sole director of Spatha Holdings Limited

---

1. This Opinion constitutes the findings of fact and conclusions of law of the Court pursuant to Federal Rule of Bankruptcy Procedure 7052.

2. The Complaint was originally filed by the Official Committee of Unsecured Creditors. Since then, the case was converted to chapter 7, and a chapter 7 trustee ("the Trustee") was appointed.

3. Where a party has filed a motion to dismiss for failure to state a claim, the Court must accept the allegations of the complaint as true and draw all reasonable factual inferences in favor of the plaintiff. *See, e.g., Weston v. Commonwealth of Pennsylvania,* 251 F.3d 420 (3d Cir.2001); *Semerenko v. Cendant Corp.,* 223 F.3d 165, 180 (3d Cir.2000). We therefore accept all of the allegations of the Complaint as fact for the purpose of deciding these motions.

("Spatha") which owns all of the stock of Holding. Holding owns 92% of High Strength Steel, Inc. ("the Debtor")[4] and 100% of Properties. Holding and Properties are "insiders" of the Debtor. *See* 11 U.S.C. § 101(2), (31). Lozinski, as the sole director and controlling shareholder of the Debtor's affiliate, Spatha, is an insider of the Debtor. *Id.* Because of their relationship to the Debtor, we refer to Holding, Properties and Lozinski, collectively as "the Insider Defendants."

## A. *The Loan Agreement*

In September, 1996, the Debtor and the Insider Defendants entered into a loan agreement with PNC pursuant to which they executed promissory notes for which each was jointly liable. The Debtor also pledged its interest in all of its personal property and three parcels of real property as collateral. Lozinski signed a personal guaranty (up to $2 million) of the Debtor's obligation to PNC ("the Guaranty"). The Guaranty also waived all of Lozinski's rights of subrogation, indemnification or contribution from the Debtor for any payment made by Lozinski to PNC.

## B. *The Debtor's Financial Condition*

In 1997, the Debtor became insolvent when it could not repay the PNC loans as they came due while paying its trade creditors. A year later, PNC began auditing the loans, because it was concerned about the Debtor's solvency. The audit process included frequent contact among Lozinski, his managers, and an agent of PNC. PNC also sent its auditors to the headquarters of each of the co-obligors on a quarterly basis. As a result, PNC was aware of the financial status of each company. These visits continued for two years.

## C. *Benefits at the Debtor's Expense*

The Complaint alleges that the Insider Defendants all benefitted from the PNC loans at the Debtor's expense. Specifically, Holding received over $11.4 million of the money loaned by PNC while the Debtor received less than $300,000. At the same time, the corporate records show that the Debtor incurred intercompany debt in excess of $5.4 million. While the Trustee concedes that this could show that Holding borrowed money from PNC and then re-loaned a portion of those funds to the Debtor, it is evident that Holding remitted only some of the funds it received to Debtor. Meanwhile, the Debtor was liable for everything Holding had borrowed.

## D. *Corporate Allocation*

In 1997, Holding charged the Debtor $2,265,506 for "corporate allocation." In 1998, the corporate allocation charge increased to $2,424,200. The Complaint alleges that some of the corporate allocation charges exceeded the value of any benefit to the Debtor and, therefore, booking those charges constituted a breach of Holding's and Lozinski's fiduciary duty. Further, the Trustee asserts that Holding and Lozinski cannot support the charges because there are no records showing how the allocations were made.

The Trustee also alleges that in 1999 Lozinski retroactively increased the rent paid by the Debtor to Properties by almost $2 million. The Trustee asserts that this retroactive increase was also a breach of fiduciary duty.

## E. *Repayment of Debt to PNC*

The Trustee asserts that because of Holding's precarious financial condition Lozinski and PNC arranged for the Debt-

---

**4.** The remaining stock is held by an employee stock ownership plan.

or to repay almost all of the PNC debt throughout 1999, principally by selling the Debtor's assets and transferring the proceeds to PNC.

In support of its allegations, the Trustee relies upon a memorandum to PNC dated October 26, 1999, in which Lozinski stated "I am pleased to hear that you agree with our course of action in the liquidation of High Strength Steel.... I see our goal as being mutual, PNC to collect the $3.5 million and High Strength Steel to pay off the Debt."

In 1999, despite having borrowed very little of the money due to PNC, the Debtor paid PNC $886,521 in interest, while Holding, which had borrowed the vast majority of money from PNC, paid nothing. Meanwhile, as of July, 1999, Properties paid PNC $86,416 in interest, but paid nothing to the Debtor despite owing the Debtor $3.3 million.

As of July 31, 1998, the company records show that the Debtor owed Holding over $4.5 million. Over the next year, through repayment of the PNC debt, the Debtor "loaned" Holding and Properties over $9.3 million. Accordingly, the Debtor became a creditor of Holding and Properties, being owed over $4.2 million by its affiliates. The Trustee asserts that this was a breach of fiduciary duty since no independent third party would have loaned money to a company in the financial situation of Holding or Properties. Because Lozinski had signed a $2 million personal guarantee of the PNC debt, the repayment of the PNC loans by the Debtor benefitted him personally.

Further, the Trustee asserts that PNC aided and abetted Lozinski's breach of fiduciary duty to the Debtor by assisting him in the liquidation of the Debtor's assets. The Trustee asserts that PNC was aware that, as a result of the repayment by the Debtor, Lozinski would be free of his guarantee at the expense of the Debtor's unsecured creditors who could not be paid.

### F. *The Pre–Petition Reconciliation*

The Trustee alleges that after July 31, 1999, Lozinski, "cooked the books" by reconciling the Debtor's financial records in further violation of his fiduciary duties. Specifically, the Trustee asserts that Lozinski instructed the Debtor's Controller, W. Jerry Baker, to increase retroactively the Debtor's rent for the last 14 years. Baker complied, thus eliminating $1,888,600 of Properties' debt to the Debtor.

### G. *Post–Petition Transactions*

On December 13, 1999, the Debtor filed for relief under chapter 11 of the Bankruptcy Code. In January, 2000, Baker again reconciled the Debtor's books. Specifically, Baker examined Holding's 1999 retained earnings balance. Without its share of the retained earnings of the Debtor and Properties, Holding's retained earnings balance was a negative $7.4 million. Baker retroactively attributed all these losses to the Debtor.

The Trustee alleges that Lozinski attempted to conceal the retroactive allocations by consolidating the information on the Debtor's financial statements. Further, Baker did not prepare the financial statements for the Debtor until after October 5, 1999, and Lozinski delayed providing the financial information to the Committee.

### H. *Other Allegations*

The Complaint alleges that Lozinski committed other breaches of his fiduciary duty, including usurping the Debtor's opportunity to purchase valuable real estate by having Properties make the purchase

alone; selling an asset of the Debtor to Wagner Plate Works, a company controlled by Lozinski, during the insider preference period; and misleading creditors as to the ownership of the Debtor's assets in a sworn pleading filed with a Texas Court.

## II. *JURISDICTION*

This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (M) and (O).

## III. *DISCUSSION*

The Defendants have filed motions to dismiss 18 of the 22 counts of the Complaint asserting failure to state a cause of action. The Insider Defendants have filed a Motion to Dismiss Counts 1, 4–10, 12–14, 15–16, and 18–20 of the Complaint; PNC has filed a Motion to Dismiss Counts 21 and 22.

### A. *The Pre–Petition and Post–Petition Reconciliations Were Transfers*

The Complaint contains nine counts which allege a transfer of the Debtor's interest in property: Count 1 (preference pursuant to section 547 against Lozinski, Holding, and Property); Counts 5, 12 and 18 (fraudulent conveyance pursuant to section 548(a)(1)(A) against Lozinski, Holding, and Property); Counts 6, 13 and 19 (fraudulent conveyance pursuant to section 548(a)(1)(B) against Lozinski, Holding, and Property); and Counts 9 and 16 (unauthorized post-petition transfers pursuant to section 549 against Lozinski and Holding).

The Insider Defendants assert that the alleged transfers were nothing more than reconciliations of accounting statements prepared in accordance with GAAP and GAAS to reflect accurately the Debtor's finances. Therefore, Lozinski asserts that the reconciliations are not "transfers" as defined by section 101(54) of the Bankruptcy Code, because the Debtor never parted with any interest in property, never having any property interest in the funds. Rather, those funds belonged to the Defendants and the reconciliations merely reflected the true state of affairs between the Debtor and the Defendants.

 Section 101(54) defines a "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property." Courts have concluded that the language of the statute is very broad. *See, e.g., Martin v. Bajgar (In re Bajgar),* 104 F.3d 495, 498 (1st Cir.1997); *Besing v. Hawthorne (In re Besing),* 981 F.2d 1488, 1492 (5th Cir.1993); *Gibson v. United States (In re Russell),* 927 F.2d 413, 417 (8th Cir.1991); *In re Badger Lines, Inc.,* 206 B.R. 521, 526 (E.D.Wis.1997). The Ninth Circuit stated:

> A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property.

*Bernard v. Sheaffer (In re Bernard),* 96 F.3d 1279, 1282 (9th Cir.1996). This is further buttressed by the legislative history of section 101(54). *See* S.Rep. No. 989, 95th Cong. 27 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813; H.R.Rep. No. 595, 95th Cong. 314 (1977), reprinted in 1978 U.S.C.C.A.N. 5963 ("[t]he definition of transfer is as broad as possible").

 Defining "transfer" broadly, we conclude that a reconciliation may consti-

tute a transfer of a debtor's interest in property. A reconciliation is defined as "an adjustment of accounts so that they agree, particularly where there are outstanding items." *Black's Law Dictionary* 1278 (1999). Adjusting the accounts could directly or indirectly dispose of a property interest particularly where the adjustment effects a setoff or recoupment.

■ In this case, prior to the reconciliation, the Debtor's records stated that the Debtor was entitled to payment of over $9 million from Holding and Properties. After the reconciliation of the Debtor's books, the Debtor's records reflected no such debt due. This adjustment of accounts could have effected a setoff of debts among the Debtor and the Insider Defendants or eliminated a debt owed by the Insider Defendants to the Debtor. Therefore, the reconciliation affected the Debtor's interest in property. This elimination of the Debtor's claim against the Insider Defendants was a transfer.

Even if we did not conclude that the reconciliation was a transfer, there is a question of material fact which would preclude us from being able to grant the Insider Defendants' motion to dismiss: whether the reconciliation conformed to GAAP and GAAS. We are able to reasonably infer from Trustee's allegations that the reconciliation did not conform to the appropriate standards.

Ultimately, we need not rely upon a question of material fact in making our decision. We conclude, as a matter of law, that the reconciliation was a transfer, as defined by the Code. Therefore, we conclude that the Insider Defendants' motion is denied as to these counts.

B. *Counts 7, 14 & 20—Fraudulent Conveyance Under State Law (Lozinski, Holding, and Property)*

■ The Complaint alleges that within the one-year insider preference period,

Lozinski caused the Debtor to transfer money to Holding and Property for fraudulent corporate allocation charges, caused the Debtor to repay Holding's debt and expenses, reallocated Holding's debt to the Debtor's books, and retroactively recalculated the Debtor's rent to Properties. At the time of those actions, the Debtor was indebted to several creditors who continued to provide materials and services to the Debtor on credit. The Trustee alleges that the actions constituted transfers for less than reasonably equivalent value with the intent to hinder, delay or defraud the Debtor's unsecured creditors. Therefore, the Trustee alleges the property transferred from the Debtor to Holding and Property should be returned pursuant to the Delaware Fraudulent Transfer Act, codified at 6 Del.Code Ann. §§ 1301, *et seq.*

The basis of the Insider Defendants' motion to dismiss these counts is that the reconciliation of the Debtor's financial records does not fit within the definition of a "transfer." Under Delaware state law, a transfer is defined as:

Every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset, or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

6 Del.Code Ann. § 1301(12) (Michie 1993 & Supp.1998). This definition is substantially similar to the definition of a transfer in the Bankruptcy Code. Thus, we conclude that the definition of transfer is broad enough to encompass the actions alleged in these counts of the Complaint. The Trustee has plead all of the elements required for an action under the Delaware Fraudulent Transfer Act. Therefore, the Insider Defendants' motion to dismiss Counts 7, 14 and 20 is denied.

C. *Counts 4 & 10—Breach of Fiduciary Duty (Lozinski and Holding)*

The Complaint alleges that Lozinski, as the sole director of the Debtor, and Holding, as the controlling shareholder of the Debtor, had a fiduciary duty to the Debtor's unsecured trade creditors to act for the benefit of those creditors once the Debtor became insolvent. The Trustee alleges that the Insider Defendants breached their fiduciary duty by causing the Debtor to pay PNC at the expense of those unsecured creditors at a time when the Debtor was insolvent. As a result, the Trustee asserts that Lozinski and Holding are liable for the repayment of the diverted funds.

The Insider Defendants assert that the Trustee failed to state a claim upon which relief may be granted because the transfer of funds from the Debtor to PNC was merely paying PNC's legitimate, secured claim against the Debtor. The Defendants assert that, because of its secured status, PNC's debt had to be paid first. Therefore, they were acting within the Code's equitable distribution scheme by paying the senior secured creditor and reducing interest payments for the benefit of all other creditors.

We reject the Defendants' assertion that the Trustee failed to state a cause of action. The Complaint alleges that the Debtor became insolvent in 1997. Under Delaware law, once a corporation becomes insolvent, its officers and directors owe unsecured creditors a fiduciary duty. *See, e.g., LaSalle Nat'l Bank v. Perelman,* 82 F.Supp.2d 279, 290 (D.Del. 2000). That fiduciary duty requires that the controlling shareholder(s) and director(s) of the debtor maximize the value of the assets for payment of unsecured creditors. *Odyssey Partners, L.P. v. Fleming Co., Inc.,* 735 A.2d 386, 417 (Del.

Ch.1999). *See also Bovay v. H.M. Byllesby & Co.,* 38 A.2d 808, 813 (Del.Ch.1944).

The Trustee's allegations sufficiently allege a breach of that duty. First, the Complaint alleges that Lozinski caused the Debtor to repay all of the debt to PNC rather than causing the co-obligors to pay their share of that debt. If proven, that allegation is sufficient to support a claim of breach of fiduciary duty.

In addition to the payments to PNC, the Trustee alleges that Lozinski committed other breaches of his fiduciary duty, including usurping the Debtor's opportunity; selling an asset of the Debtor to an insider; and subordinating the Debtor's rights to the rights of Properties. If any of these acts are established, we could conclude that the Insider Defendants breached their fiduciary duty to maximize the value of the Debtor. Based on the allegations in the Complaint, we may reasonably infer that Lozinski and Holding breached their fiduciary duty. Therefore, as to Counts 4 and 10, Lozinski and Holding's motion is denied.

D. *Counts 8 & 15—Violation of the Automatic Stay Under Section 362(a)(3), (6), and (7) (Lozinski and Holding)*

The Complaint alleges that Lozinski and Holding knowingly violated the automatic stay pursuant to section 362(a)(3), (6), and (7) by retroactively charging the Debtor more than $7.4 million after the petition date. The Trustee seeks compensatory and punitive damages for the Defendants' willful violation of the automatic stay.

In their Motion to Dismiss, Lozinski and Holding assert that the Trustee failed to state a cause of action because the act of reconciling the Debtor's accounting statements in the ordinary course of business is not an action to collect, assess, or recover a claim held by Holding or Lozinski

against the Debtor and is not a setoff. Further, they again assert that the Debtor never rightfully owned the funds allegedly transferred to the Defendants by virtue of the account reconciliation process. Therefore, they assert, there was no violation of the automatic stay.

Lozinski and Holding also seek to Dismiss Counts 8 and 15 because they assert that section 362(h) is inapplicable because any violations were not willful. Additionally, Holding asserts that section 362(h) does not apply to Holding because it is not an "individual."

■■■■ We reject the Defendants' argument that the reconciliation was not a transfer for the reasons discussed in Part III(A), *supra*. We also conclude that, according to the Trustee's allegations, the reconciliation did effect a setoff which is subject to the automatic stay. *See, e.g., In re Patterson,* 967 F.2d 505, 509 (11th Cir. 1992); *In re Village Craftsman, Inc.,* 160 B.R. 740, 746 (Bankr.D.N.J.1993). Section 362(a)(7) stays "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). Therefore, a creditor cannot unilaterally offset its claim against the claim of a debtor without first obtaining court approval. *In re Village Craftsman, Inc.,* 160 B.R. at 746. According to the allegations of the Complaint, the pre- and post-petition reconciliation of the debts due between the Debtor and its affil-

iates constituted a setoff eliminating over $11 million in debt owed by the affiliates to the Debtor.

■■■■ We also reject the Defendants' argument that this count should be dismissed because their actions were not willful. The Complaint alleges that the transfer was a knowing violation of the automatic stay. Alleging that a creditor has violated the automatic stay with knowledge that the bankruptcy petition has been filed is, *per se,* an allegation of a willful violation. *See, e.g., Lansdale Family Rest., Inc. v. Weis Food Svc. (In re Lansdale Family Rest., Inc.),* 977 F.2d 826, 829 (3d Cir.1992); *University Med. Ctr. v. Sullivan (In re University Med. Ctr.),* 973 F.2d 1065, 1087–88 (3d Cir. 1992). Accordingly, we conclude that this count of the Complaint states a cause of action on which relief can be granted.

■■■■ We also reject Holding's argument that it is exempt from liability under section 362(h) because it is not an individual. Section 362(h) provides: "Any *individual injured* by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h) (emphasis added). The statutory language of section 362(h) clearly provides no safe harbor for corporate creditors to avoid punitive damages where they have violated the automatic stay.[5]

---

5. The more interesting (and unplead) issue is whether the Debtor may recover punitive damages because it is not an individual. The Third Circuit has answered this question in the affirmative. *See, e.g., Cuffee v. Atlantic Bus. and Cmty. Corp. (In re Atlantic Bus. and Cmty. Corp.),* 901 F.2d 325, 329 (3d Cir.1990). *See also Lansdale Family Rest., Inc. v. Weis Food Svc. (In re Lansdale Family Rest., Inc.),* 977 F.2d 826, 828–29 (3d Cir.1992) (finding creditor liable for violating the automatic stay

against a corporate debtor); *Budget Svc. Co. v. Better Homes of Virginia, Inc.,* 804 F.2d 289, 292–93 (4th Cir.1986). The rationale for allowing all debtors to seek damages for violations of the automatic stay is that it is unlikely that Congress intended to protect only individual debtors from willful violations. Further, permitting parties to violate the automatic stay without liability would defeat the purpose of the automatic stay in corporate cases. *Budget Svc. Co.,* 804 F.2d at 292.

The Defendants' motion to dismiss Counts 8 and 15 for failure to state a claim is therefore denied.

### E. *Count 21—Aiding and Abetting Breach of Fiduciary Duty*

 The Trustee asserts that PNC knew of Lozinski's fiduciary duty to the Debtor's unsecured creditors. Further, the Trustee asserts that PNC knew, through its auditor, that Lozinski and Holding were breaching their fiduciary duties by diverting funds from the Debtor to pay the debts of the other co-obligors. The Trustee also alleges that PNC knowingly participated in that breach of fiduciary duty by accepting the diverted funds. The Trustee therefore seeks repayment of those funds for the benefit of the Debtor's unsecured trade creditors.

PNC asserts, *inter alia*, that the Trustee has failed to plead sufficient facts to demonstrate any harm to unsecured creditors. Further, PNC asserts that the Trustee admits that the Debtor was an obligor on the notes and does not dispute the validity of PNC's security interest. PNC asserts that it was entitled to receive payment on the secured obligations from the Debtor before the unsecured creditors were entitled to any payment. Therefore, the unsecured creditors could not have suffered any harm.

We reject PNC's argument that the Trustee's action must be dismissed for failure to demonstrate harm to unsecured creditors. This argument fails because the demonstration of harm to others is not an element of aiding and abetting a breach of fiduciary duty under Pennsylvania law. Rather, the lack of harm to unsecured creditors is relevant only in determining the amount of damages.

Under Pennsylvania law,[6] the elements for aiding and abetting a breach of fiduciary duty are (1) a breach of a fiduciary duty owed to another; (2) knowledge of the breach by the aider or abetter; and (3) substantial assistance or encouragement by the aider or abettor in effecting that breach.[7] *See Stone St. Svcs., Inc. v. Daniels,* No. CIV.A. 00–1904, 2000 WL 1909373, at *3 (E.D.Pa. Dec.29, 2000); *SDK Inv., Inc. v. Ott,* No. CIV.A. 94–1111, 1996 WL 69402, at *12 (E.D.Pa. Feb.15, 1996); *Pierce v. Rossetta Corp.,* No. CIV.A. No. 88–5873, 1992 WL 165817, at *8 (E.D.Pa. June 12, 1992).

The Trustee alleges that PNC assisted or encouraged that breach, as evidenced by the October 26, 1999, letter from Lozinski to PNC. That letter states that PNC agreed with the Insider Defendants' course of action. From that letter, we can reasonably infer that PNC's involvement went beyond a good faith effort to collect money which was owed to it.

Although we have concluded above that the Complaint states a cause of action for breach of fiduciary duty, we are presently unable to determine whether the Insider Defendants committed a breach of fiduciary duty. If the Trustee cannot prove a breach of fiduciary duty by the Insider Defendants, the aiding and abetting claim against PNC will fail.

---

**6.** In its brief, PNC asserts, and the Trustee does not contest, that the loan documents at issue include a choice of law provision favoring Pennsylvania law. We therefore analyze the actions arising under those agreements under Pennsylvania law.

**7.** No state court has addressed whether a claim for aiding and abetting a breach of fiduciary duty is actionable in Pennsylvania; however, a number of federal courts have concluded that the state courts would recognize the cause of action. *Stone,* 2000 WL 1909373, at *3; *SDK Inv.,* 1996 WL 69402, at *12; *Pierce,* 1992 WL 165817, at *8.

We also do not determine whether PNC's involvement rose to a level of "substantial assistance or encouragement." That is an issue of fact for adjudication. At this juncture, we only conclude that the Trustee's Complaint sufficiently alleges facts to support a cause of action against PNC for aiding and abetting a breach of fiduciary duty. PNC's motion to dismiss this count is, therefore, denied.

### F. Cause 22—Marshaling Doctrine

The Complaint alleges that the equitable doctrine of marshaling requires that PNC return the money paid by the Debtor because the Debtor and the Insider Defendants were all co-obligors under the notes to PNC and each of the other co-obligors had money which should have been used to pay the debt. Instead, PNC caused the Debtor to pay the majority of the obligations jointly owed by all the co-obligors. In the absence of marshaling, the unsecured creditors have no other source of repayment.

■ Marshaling is an equitable doctrine which provides that where a creditor has two funds from which to satisfy its debt, it "may not, by application of them to [its] demand, defeat another creditor who may resort to only one of the funds." *Meyer v. United States*, 375 U.S. 233, 236, 84 S.Ct. 318, 11 L.Ed.2d 293 (1963) (*quoting Sowell v. Fed'l Reserve Bank*, 268 U.S. 449, 456–57, 45 S.Ct. 528, 69 L.Ed. 1041 (1925)).

■ In the absence of a statute to the contrary, property rights are determined by state law. *See, e.g., Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Marshaling is one such property right. *See, e.g., Meyer v. United States*, 375 U.S. at 237–39; *Owens–Corning Fiberglas Corp.*

*v. Ctr. Wholesale, Inc.*, 759 F.2d 1440, 1447 (9th Cir.1985); *Gibson v. Farmers and Merchants Bank*, 81 B.R. 84, 87 (N.D.Fla. 1986); *Official Comm. Of Unsecured Creditors of America's Hobby Ctr., Inc. v. Hudson United Bank (In re America's Hobby Ctr., Inc.)*, 223 B.R. 275, 287 (Bankr. S.D.N.Y.1998); *In re Gibson Group*, 151 B.R. 133, 134 (Bankr.S.D.Ohio 1993).

■ Under Pennsylvania law, marshaling is permitted where (1) one creditor has a secured claim against two funds; (2) another creditor has a claim against only one of these funds; and (3) the creditor seeking to invoke marshaling can show that the rights of the senior secured creditor will not be endangered or injuriously delayed and that there is no reasonable doubt of the availability of another fund to satisfy the senior secured creditor's demand. *See, e.g., American Nat'l Ins. Co. v. Vine–Wood Realty Co.*, 414 Pa. 263, 269–70, 199 A.2d 449 (1964); *Small Business Admin. v. Friend (In re A.E.I. Corp.)*, 11 B.R. 97, 99 (Bankr.E.D.Pa.1981); *In re Weiss*, 34 B.R. 346, 349 (Bankr. E.D.Pa.1983). Only where all of those conditions are met, may the court require that the senior secured creditor's claim be "first satisfied out of that fund which is security for his loan only." *American Nat'l Ins. Co. v. Vine–Wood Realty Co.*, 414 Pa. at 270, 199 A.2d 449.

PNC raises five defenses to the Trustee's marshaling argument: the Trustee may not require that PNC marshal assets because the Trustee is not a secured creditor of the Debtor; there is no showing that PNC would not be prejudiced; the funds in question do not belong to a common debtor; the Trustee has not shown that there would be no injustice to a third party; and marshaling may not be applied after the money has been disbursed.

1. *The Trustee's Standing to Compel Marshaling*

 PNC argues that the Trustee may not require that PNC marshal assets because the Trustee only represents the interests of unsecured creditors. Because the unsecured creditors are not lienholders competing with PNC, a secured creditor, the Trustee's claim based upon the marshaling doctrine must be dismissed. We reject PNC's argument.

As noted above, state law determines the secured creditor's equitable rights of marshaling. There appears, at first blush, to be a split of authority under Pennsylvania law whether or not a trustee in bankruptcy has standing to bring an action for marshaling. Among the Pennsylvania bankruptcy courts, there are four decisions on this issue. Two of those decisions, *In re Wilmot Mining Co.*, 167 B.R. 806, 811 (Bankr.W.D.Pa.1994) and *Ludwig Honold Mfg. Co. v. Central Penn Nat'l Bank (In re Ludwig Honold Mfg. Co.)*, 34 B.R. 645, 646 (Bankr.E.D.Pa.1983), squarely hold that a chapter 7 trustee, as a hypothetical lien creditor, may compel marshaling pursuant to his strong arm powers. The other two decisions which addressed the subject never directly dealt with the issue of whether the trustee could proceed with a marshaling action. In *Pittsburgh Nat'l Bank. v. Lomb (In re Lomb)*, 74 B.R. 711,

711 (Bankr.W.D.Pa.1987), the Court held that the trustee could not bring an action for marshaling because neither the unsecured creditors nor the debtor's estate would benefit from the application of the marshaling doctrine. The Court concluded that if the secured creditor were required to satisfy its claim from a co-obligor, the co-obligor would have rights which were superior to the general unsecured creditors. 74 B.R. at 711–12.

In *Mihalko v. Continental Bank and Trust Co. (In re Mihalko)*, 87 B.R. 357, 363 (Bankr.E.D.Pa.1988), the Court never squarely addressed the standing issue because the parties had apparently agreed that the Trustee had standing.[8]

Courts which have allowed trustees to bring actions for marshaling have done so based upon section 544(a) which gives a trustee the status of a secured creditor as of the petition date. *See, e.g., Wilmot Mining Co.*, 167 B.R. at 811; *Ludwig Honold Mfg. Co.*, 34 B.R. 645, 646. Notwithstanding a few published decisions and commentators' opinions[9] to the contrary, the majority of decisions which have addressed the issue have held that a trustee has standing under section 544(a) to bring an action to compel marshaling. *See, e.g., See Duck v. Wells Fargo Bank (In re Spectra Prism Industries, Inc.)*, 28 B.R. 397, 399 (9th Cir. BAP 1983); *Fundex*

---

8. In a fifth decision, *In re Paolino*, 72 B.R. 555 (Bankr.E.D.Pa.1987), Judge Fox, in dicta, stated "I am doubtful whether, strictly speaking, [the marshaling] doctrine may be invoked here by the trustee as opposed to a junior lienholder." 72 B.R. at 557 n. 4 (Bankr. E.D.Pa.1987).

9. *See, e.g., Federal Land Bank of Columbia v. Tidwell (In re McElwaney)*, 40 B.R. 66, 70–71 (Bankr.M.D.Ga.1984); *Canal Nat'l Bank v. Larry's Equip. Svc., Inc. (In re Larry's Equip. Svc., Inc.)*, 23 B.R. 132 (Bankr.D.Me.1982); Moses Lachman, Marshaling Assets in Bankruptcy: Recent Innovations in the Doctrine, 6

Cardozo L.Rev. 671, (1985) ("Bankruptcy courts should refrain from applying the marshaling doctrine in favor of unsecured creditors to the burden of those who are secured"); Liebowitz, Marshaling of Assets under the Bankruptcy Code, 189 N.Y.L.J. p. 1, col. 1 (June 16, 1983) ("marshaling of assets is a time honored equitable doctrine that should not be expanded to protect the interests of unsecured creditors ... A trustee as a hypothetical junior lien creditor under Section 544(a)(1) of the Bankruptcy Code, should not be permitted to obtain any interest in secured property under the marshaling doctrine").

*Capital Corp. v. Balaber–Strauss (In re Tampa Chain Co. Inc.),* 53 B.R. 772, 777 (Bankr.S.D.N.Y.1985); *Merrigan v. Small Bus. Admin. (In re Clary House, Inc.),* 11 B.R. 462, 466–67 (Bankr.W.D.Mo.1981). We agree with the majority view.

Section 544(a) endows a bankruptcy trustee with the status of a lien creditor as of the date of the bankruptcy filing to enable the trustee to exercise his "strong arm power." Although a trustee is a secured creditor whose rights are junior to security interests which were perfected prior to the petition date, the trustee is, nonetheless, a secured creditor. By stepping into the shoes of such a creditor, the trustee enjoys whatever rights and powers that status conveys under state law. *See, e.g., Angeles Real Estate Co. v. Kerxton (In re Construction Gen., Inc.),* 737 F.2d 416, 418 (4th Cir.1984). Accordingly, we conclude that a bankruptcy trustee, as a hypothetical lien creditor as of the petition date, has standing to bring an action for marshaling.

### 2. *The Common Debtor Requirement*

It appears, at first blush, that the Trustee's action must fail due to the common debtor requirement. Upon closer inspection, however, we conclude that the so-called "common debtor" requirement is not mandatory. Accordingly, we find that this argument fails.

■■ The Pennsylvania Supreme Court has stated that "marshaling does not prevail except where both funds are in the hands of a common debtor of both creditors or unless the fund not taken is one which in equity is primarily liable." *Miller*

*Lumber & Coal Co. v. Berkheimer,* 342 Pa. 329, 331, 20 A.2d 772 (1941). Therefore, to assert the common debtor defense a secured creditor must be able to sustain a two prong test: first the secured creditor must show that the other fund to be collected upon is not owned by the same debtor. Second, the secured creditor must prove that the second fund is not primarily liable for its claim.[10]

■■ Here, it is uncontested that the funds from which the Trustee seeks to have PNC collect are not owned by a common debtor. Rather, the Trustee seeks to compel PNC to pursue its remedies against other parties who are co-obligors. The Trustee has asserted that the borrowed funds primarily benefitted the Defendants rather than the Debtor. Further, the Trustee has alleged that PNC conspired with the other Defendants to cause the Debtor's assets to be sold in satisfaction of the debt. We cannot conclude, as a matter of law, that the Trustee will be unable to prove that PNC should, in equity, be permitted to pursue its remedy against the co-obligors first.

Accordingly we must deny PNC's second argument.

### 3. *Injustice to a Third Party*

■■ We also reject PNC's argument that the Trustee's action to compel marshaling should be denied because the Trustee has failed to assert that it would not cause any injustice to third parties, including Defendants Lozinski, Holdings, and Properties. This prong of the test is meant to protect innocent third parties, not alleged co-conspirators in a fraud

---

**10.** Notwithstanding that *Miller Lumber* was decided more than a half a century ago, and that a number of courts have reduced the two-prong test to the shorthand "common debtor" requirement, we are unable to find any decision of the Pennsylvania Supreme Court which expressly eliminated the second requirement. *See also Ludwig Honold,* 33 B.R. at 727 (quoting *Miller Lumber*).

against the Debtor. Accordingly, we conclude that under the facts of this case, a party seeking to compel a secured creditor to collect from a co-obligor (who is alleged to have committed inequitable conduct) need not demonstrate that marshaling would not harm those co-obligors.

### 4. *Marshaling after Disbursement*

■ PNC asserts that the Trustee's request for marshaling is untimely because "the time for ... marshaling is when ... realization [out of the security] is sought." *In re Borges,* 184 B.R. 874, 880 (Bankr. D.Conn.1995) (*citing Hartford Nat'l Bank and Trust Co. v. Kotkin,* 185 Conn. 579, 581, 441 A.2d 593 (1981)). Although *Borges* was based upon Connecticut law, the rule which requires a timely demand for marshaling is consistent with the Pennsylvania Supreme Court's decision in *American Nat'l Ins. Co. v. Vine–Wood Realty Co.,* 414 Pa. 263, 199 A.2d 449 (1964).

In *Vine–Wood Realty,* the United States held a secured tax claim against a hotel which was subject to other liens and securities deposited with a bank as collateral on the bank's loan. Initially, the mortgagee on the hotel instituted foreclosure proceedings, a judgment was entered, and the property was sold. The United States subsequently petitioned the court for distribution of the proceeds of the foreclosure sale in payment of the unpaid tax debt. Before receiving any distribution, the United States permitted the bank to liquidate the securities to satisfy the bank's secured claim. After the bank had begun selling the securities, the first mortgagee on the hotel raised the issue of marshaling. The Court found that in order to invoke the doctrine of marshaling, "the right to marshal must exist at the time the common fund is available for distribution." *Vine–Wood Realty,* 414 Pa. at 270, 199 A.2d 449. The Court found that the mort-

gagee's demand came too late and was therefore waived. *Id.* at 270, 199 A.2d 449.

■ In this case, the Trustee asserts that it should be permitted to pursue an action for marshaling with respect to funds which the Debtor remitted to PNC prior to the petition date. Such a request is not timely under *Vine–Wood Realty* because the funds have already been disbursed to PNC. Therefore, as a matter of law, the Trustee's attempt to compel marshaling is not timely and must fail.

### 5. *Prejudice to PNC*

PNC asserts that the Trustee should not be allowed to compel marshaling because to do so would be prejudicial to PNC's rights. Specifically, PNC asserts that compelling marshaling would require the disgorgement of funds already received. PNC additionally cites the delay, increased costs, and uncertainty of collection that it would incur in now proceeding against the Insider Defendants. We agree.

■ As noted, *supra,* no secured party can be compelled to marshal where its rights will be endangered or injuriously delayed or there is a reasonable doubt of the availability of another fund to satisfy the senior secured creditor's demand. *American Nat'l Ins. Co. v. Vine–Wood Realty Co.,* 414 Pa. 263, 269–70, 199 A.2d 449 (1964); *Small Business Admin. v. Friend (In re A.E.I. Corp.),* 11 B.R. 97, 99 (Bankr.E.D.Pa.1981); *In re Weiss,* 34 B.R. 346, 349 (Bankr.E.D.Pa.1983). Here, we find that all three of these factors exist. The Debtor has already paid PNC, and compelling PNC to disgorge those funds would put PNC at risk of loss while it attempts to collect from co-obligors who are already the subject of a suit by the Trustee. At the very least, PNC would be forced to incur delay and further costs of collection. Such actions would unduly prejudice PNC.

We conclude that the Trustee may not compel PNC to collect its debt from the Insider Defendants because the disbursements to PNC were already made and PNC would be prejudiced. Consequently, PNC's motion to dismiss Count 22 is granted.

## IV. *CONCLUSION*

For the foregoing reasons, the Insider Defendants' motion to dismiss Counts 1, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 18, 19 and 20 is denied. PNC's motion to dismiss is denied as to Count 21 and is granted as to Count 22.